## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **ALESHIA ATKINSON, ANGELINA WILLIAMS,  BRAWNSON REWIS, BRIANA BRITTON, CALISTA TAYLOR, DARRYL WALLER, LINDSEY SIMMONS, and TANIQUE CLARKE,** individually, and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>**WAYFAIR LLC**, a Delaware Limited Liability Corporation,<br><br>Defendant. | Case No.:<br><br>Hon.: |

## CLASS ACTION COMPLAINT
## <u>AND JURY DEMAND</u>

Plaintiffs, ALESHIA ATKINSON, ANGELINA WILLIAMS, BRAWNSON REWIS, BRIANA BRITTON, CALISTA TAYLOR, DARRYL WALLER, LINDSEY SIMMONS, and TANIQUE CLARKE, (collectively "Plaintiffs"), individually and on behalf of all others similarly situated, by and through their attorneys, hereby bring this Class Action Complaint against Defendant WAYFAIR, LLC ("Defendant"), and states as follows:

### <u>INTRODUCTION</u>

1.      This is a class action[1] brought pursuant to Fed. R. Civ. P. 23 and arising from Defendant's willful violations of the Colorado Minimum Wage Act ("CMWA"), C.R.S. §§ 8-4-101, et seq; the Illinois Minimum Wage Laws ("IMWL"), 820 ILCS 105/1, et seq.; the Illinois

---

[1] A action involving wage and hour violations like those alleged herein is pending in the U.S. District Court for the District of Massachusetts, the Hon. F. Dennis Saylor IV presiding. That action is titled *Counts, et al v. Wayfair LLC* and bears case number 23-cv-11706.

Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1, et seq.; the North Carolina Wage and Hour Act, N.C.G.S.A. § 95-25.1, et.seq; Nevada Payment and Collection of Wages and Other Benefits ("NPCW"), N.R.S. §§ 608.140, 608.016, and 608.018, Nev. Const. Art. XV, Sec. 16, Failure to Pay Minimum Wages; New York Labor Law, Article 19 § 650, et seq, Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. § 333.101, et seq, Pennsylvania Wage Payment Collection Law "(PWPCL"), 43 P.S. § 260.1, et seq., Utah Payment of Wages Act ("UPWA"), Utah Code Ann. § 34-28-1, et seq., and the Virgina Wage Payment Act, VA. Code 40.1-29, et seq.

2.      Defendant offers consumers throughout the country home décor products for purchase via its website or mobile application.[2]

3.      Defendant employs remote hourly employees throughout the country to provide the consumers with customer service. These hourly employees, hereinafter collectively referred to as Customer Service Employees (or "CSEs"), have a variety of internal job titles, including Frontline Customer Service Representative, Inbound Sales Representative, and Customer and Resolution Expert (a.k.a. the "CARE" team). However, the material aspects of their employment, duties, and the wage and hour violations complained of herein are the same for all CSEs.

4.      Defendant requires its CSEs to work a full-time schedule, plus overtime, however, Defendant does not compensate CSEs for all work performed.

5.      Defendant requires their CSEs to perform compensable work tasks off-the-clock before and after their scheduled shifts and during their unpaid meal periods.

6.      This policy results in CSEs not being paid for all time worked, including overtime.

7.       While performing their job responsibilities, Defendant's CSEs use multiple computer networks, software programs, applications, and phone systems.

---

[2] *See*, www.wayfair.com (last visited November 28, 2023).

8.     The time CSEs spend booting up and logging into these programs and applications before, during, and after their shifts is compensable because the programs and applications are an integral, indispensable, and important part of the CSEs' work, and they cannot perform their jobs effectively without them.

9.     Defendant's CSEs all perform essentially the same tasks and are required to use the same or similar computer programs, software programs, applications, and phone systems.

10.     Defendant's CSEs all follow the same timekeeping process and are subject to the same relevant timekeeping and attendance policies.

11.     Plaintiffs seek to represent in this action all current and former remote CSEs who are similarly situated to each other in terms of their positions, job duties, pay structure, and Defendant's violations of state law.

12.     Defendant knew or should have known how long it takes CSEs to complete their off-the-clock work, and Defendant could have properly compensated Plaintiffs and the putative Classes for this work, but did not.

13.     Defendant knew or should have known that CSEs, including Plaintiffs, worked overtime and straight time hours for which they were not compensated.

14.     Plaintiffs seek a declaration that their rights, and the rights of the putative Classes, were violated, an award of unpaid wages, an award of statutory damages, injunctive and declaratory relief, attendant penalties and an award of attorneys' fees and costs to make them and the Classes whole for damages they suffered, and to ensure that they and future workers will not be subjected by Defendant to such illegal conduct in the future.

## **JURISDICTION**

15.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a), because the amount in

controversy exceeds $75,00.00 and there is complete diversity of citizenship among the parties.

16.     Moreover, this Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d).

17.     This is a class action in which the aggregate claims of the individual Class members exceed the sum value of $5,000,000 exclusive of interest and costs, there are believed to be in excess of 100 Class members, and at least some members of the proposed class have a different citizenship than Defendant.

18.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

19.     This Court has personal jurisdiction over Defendant because it conducts business within the state of Massachusetts, has its principal place of business and headquarters in Massachusetts, is registered with the Massachusetts Secretary of State and employs individuals within the state of Massachusetts.

20.     This Court also has personal jurisdiction over Defendant because it has purposefully availed itself of the privilege of conducting activities in the state of Massachusetts, has established minimum contacts sufficient to confer jurisdiction over it and has its principal place of business in this district and division; and the assumption of jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice and is consistent with the Constitutional requirements of due process.

## **VENUE**

21.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant conducts substantial business activities within this District and maintains its principal place of business in this District.

## PARTIES

22.    Plaintiff LINDSEY SIMMONS ("Plaintiff Simmons") is a Colorado citizen who worked for Defendant as a remote CSE in Colorado within the last three years. While employed by Defendant, Plaintiff Simmons held the job title of Customer Service Representative.

23.    Defendant paid Plaintiff Simmons for her services in the form of an hourly wage, for all credited hours worked, most recently at the rate of approximately $19.90 per hour.

24.    Plaintiff BRIANA BRITTON ("Plaintiff Britton") is an Illinois citizen who is currently employed by Defendant as a remote CSE in Illinois. Plaintiff Britton previously held the position of Frontline Agent but is currently a Customer and Resolution Expert.

25.    Defendant pays Plaintiff Britton for her services in the form of an hourly wage, for all credited hours worked. Her current hourly rate is $23.60.

26.    Plaintiff ALESHIA ATKINSON ("Plaintiff Atkinson") is a North Carolina citizen who worked for Defendant as a remote CSE in North Carolina within the applicable statute of limitations.

27.    Defendant paid Plaintiff Atkinson for her services in the form of an hourly wage, for all credited hours worked, most recently at the rate of approximately $18.60 per hour, plus non-discretionary bonuses.

28.    Plaintiff DARRYL WALLER ("Plaintiff Waller") is a Nevada citizen who worked for Defendant as a remote CSE in Nevada within the applicable statute of limitations.

29.    Defendant paid Plaintiff Waller for his services in the form of an hourly wage, for all credited hours worked, most recently at the rate of approximately $12.50 per hour.

30.    Plaintiff ANGELINA WILLIAMS ("Plaintiff Williams") is a New York citizen who worked for Defendant as a remote CSE in New York within the applicable statute of

limitations. While employed by Defendant, Plaintiff Williams held the position of Customer Service Representative.

31.    Defendant paid Plaintiff Williams for her services in the form of an hourly wage, for all credited hours worked, most recently at the rate of not less than $16.00 per hour, plus non-discretionary bonuses.

32.    Plaintiff CALISTA TAYLOR ("Plaintiff Taylor") is a Pennsylvania citizen that is currently employed by Defendant as a remote CSE in Pennsylvania.

33.    Plaintiff Taylor currently holds the role of Customer and Resolution Expert.

34.    Defendant pays Plaintiff Taylor for her services in the form of an hourly wage, for all credited hours worked. Her current hourly rate is $24.00.

35.    Plaintiff BRAWNSON REWIS ("Plaintiff Rewis") is a Utah citizen who worked for Defendant as a remote CSE in Utah within the applicable statute of limitations. While employed by Defendant, Plaintiff Rewis initially held the position of a Customer Service Representative and then was a Customer and Resolution Expert.

36.    Defendant paid Plaintiff Rewis for his services in the form of an hourly wage, for all credited hours worked at a rate at or above $16.00.

37.    Plaintiff TANIQUE CLARKE ("Plaintiff Clarke") is a Virgina citizen who worked for Defendant as a remote CSE in Virgina within the applicable statute of limitations. While employed by Defendant, Plaintiff Clarke held the position of Customer Service Representative.

38.    Defendant paid Plaintiff Clarke for her services in the form of an hourly wage, for all credited hours worked, most recently at the rate of approximately $15.50 per hour.

39.    Defendant is a Delaware limited liability company, headquartered in Boston, Massachusetts, registered with the Massachusetts Secretary of State (Identification Number

000973546) with its principal place of business located at 4 Copley Place, Boston, Massachusetts 02116.

## **GENERAL ALLEGATIONS**

40.     Defendant employed Plaintiffs as remote CSEs from Plaintiffs' home offices within the applicable statutes of limitations.

41.     Defendant's CSEs are responsible for, among other things: (a) booting up their computers and logging into several essential computer software programs and applications, as well as Defendant's phone system, before fielding phone calls; (b) taking in-bound calls from and making out-bound calls to individuals who need assistance; (c) ensuring that every call and claim is documented and accounted for in Defendant's system; (d) reading emails daily with work instructions; and (e) logging out of the computer software programs and applications and the phones and shutting down their computers.

42.     Defendant's CSE jobs are hourly, non-exempt positions with rigid schedules that regularly require CSEs, including Plaintiffs, to work at least eight (8) hours per day, on average five (5) days each week, and up to forty (40) hours or more in a workweek.

43.     These schedules result in CSEs routinely working overtime on a weekly basis.

44.     Indeed, throughout their employment with Defendant, Plaintiffs were required to work a substantial amount of unpaid time, including overtime, as part of their roles as a CSE.

45.     At all relevant times, Defendant controlled their CSEs' work schedules, duties, protocols, applications, assignments and employment conditions.

46.     Defendant was also responsible for training and continuing their CSEs' education in their role as CSEs.

47.     Defendant's CSEs all perform essentially the same tasks and are required to use the

same or similar computer programs, software programs, applications and phone systems.

48.     These programs, applications and systems are an integral and an important part of the CSEs' work, and they cannot perform their jobs without them.

49.     Defendant's CSEs all follow the same timekeeping process, are subject to the same relevant timekeeping and attendance policies, and are subject to quality assurance reviews based on the same or similar criteria.

50.     Defendant expressly instructs and trains CSEs to have all of their computer networks, software programs and applications open and ready at the start of their scheduled shifts.

51.     CSEs, including Plaintiffs, are instructed to only include the time that they are fully prepared to field calls in their hours worked each shift.

52.     In fact, Defendant's employee handbook (the "Handbook") instructs CSEs (and all other hourly employees) that "[w]e expect the time recorded in the time management system accurately reflects the scheduled/shift provided to you by your immediate supervisor or WFM. Any deviation from the scheduled/shift provided must be approved in advance."

53.     Defendant furthermore enforces their policy of requiring all computer networks, programs and applications be open and ready at the commencement of a CSE's shift, and critically, before they clock in, through their performance metrics and schedule adherence policies.

54.     More specifically, being clocked in and/or logged into the phone system (Finesse) but remaining in a status that is unavailable to receive calls for too long can result in poor performance scores and possible disciplinary action, up to and including termination.

55.     Defendant's scoring guidelines measure a CSEs' ability to adhere to mandatory protocols and are comprised of various performance metrics, including but not limited to the CSEs' complete and correct resolution of issues and inquiries from consumers.

56. Defendant's performance metrics included how quickly the CSE could resolve the consumer's issue (the "average handle time").

57. CSEs began receiving calls moments after they made themselves available in the phone system. However, not having access to their essential computer programs would lead to prolonged call times, providing inaccurate information, or a poor customer experience.

58. Defendant's performance metrics necessarily require that CSEs be logged into all computer programs, applications and systems, and have all reference materials and available resources open at the time of the first call.

59. In order to be fully prepared to promptly and efficiently handle calls, CSEs were required to have loaded and logged into all of their computer programs at the moment they clocked in to begin receiving or making calls.

60. Further, Defendant insisted that CSEs clock-in as close as possible to the scheduled start time, but not after the start of their scheduled shift.

61. Defendant subjected Plaintiffs and all other CSEs to discipline for clocking in after the start of their scheduled shift, which violated their companywide attendance policy.

62. Additionally, while Defendant routinely scheduled CSEs to work forty hours per week, and required them to work their full schedule, Defendant also prohibited CSEs from working overtime hours without advanced approval. Accordingly, recording time spent working outside of their scheduled shift would violate Defendant's prohibition on unapproved overtime.

63. In fact, the Handbook states "[e]mployees must always receive authorization from their supervisor before working any overtime, and may be subject to disciplinary action if they engage in unauthorized overtime."

64. Additionally, the Handbook states "performing overtime work not specifically

authorized in advance are all serious violations of Wayfair policy."

65.     At the end of the CSE's shift, Defendant instructed CSEs to completely shut down their computers, so (if needed) Defendant could roll out system updates and bug fixes overnight.

66.     Because CSEs are prohibited from including all hours worked in their time recorded, Defendant's compensation policy and system fails to properly account and compensate them for all time worked, including their overtime hours, each day and each workweek.

67.     Thus, the hours reflected on the CSEs' pay stubs are inaccurate and contrived by Defendant.

68.     In fact, as outlined below, Defendant maintains a common plan and policy pursuant to which they fail to pay their CSEs for not less than fourteen (14) minutes per day of work performed during pre- and post-shift time and during their lunch periods.

69.     This time could easily be recorded, accounted for and paid, but Defendant chose not to credit such time as time worked.

### A.    Pre-Shift Off-the-Clock Work

70.     In addition to their regularly scheduled shifts, and as mentioned above, Defendant's CSEs perform pre-shift work tasks for which they are uncompensated.

71.     Pursuant to Defendant's policies, training and direction, Defendant's CSEs are required to start up and log into various secure computer programs, software programs and applications in order to perform their jobs.

72.     The pre-shift startup and login process takes substantial time on a daily basis with said time averaging at least ten (10) to fifteen (15) minutes per day, and the tasks can take longer (upwards of thirty (30) minutes) if CSEs experience technical problems with the computer, software, and/or applications.

73.     Prior to the commencement of each scheduled shift, Plaintiffs, as well as the other CSEs, were required to perform a number of compensable work tasks including turning on and logging into their computers; connecting to Defendant's virtual private network (VPN); and loading and logging into a number of essential work programs. Once connected to the VPN, CSEs are required to load and log-into a number of essential work programs.

74.     Defendant's VPN (Cisco AnyConnect) required CSEs to enter a username and password, then request a code, wait for the code, then input the code to access the VPN. From a cold start, this process of establishing a connection to the VPN could easily take ten (10) minutes.

75.     Although there was some variation in computer programs used amongst various CSE positions, it was extremely minimal, and the core and essential programs used were the same for all CSEs.  For example, all CSEs used the Cisco AnyConnect (the "VPN"), Finesse (phone system), G-mail (email), Jabber or Slack (chat), Aspect or Verint (identified scheduled breaks for the day), Okta (this housed various applications needed to perform CSE job duties and the timekeeping system)[3], the Wayfair website, and Workday (timekeeping).

76.     Additionally, CSEs required access to the Wayfair Support Hub (processing tickets), Service Hub (chats from customers), and Knowledge Hub (operational procedures).

77.     All CSEs were required to clock-in using a dual authentication process with the programs Okta and Workforce. After loading and logging into all of their computer programs, CSEs requested a code through Okta that was sent to their phone. From there, the CSEs inputted the code into the Workday program to clock themselves in.

78.     Notably, CSRs could not even access Okta or Workday without first establishing a connection to the VPN.

_____

[3] Okta, like the VPN, also required a dual-authentication log-in process (username, password, and mobile code).

79.    The aforementioned tasks are an integral and essential aspect of a CSE's job duties and responsibilities, as CSEs must have all of the above referenced computer programs, systems, and applications up and running on their computers in order to be prepared to accept calls.

80.    Yet, Defendant fails to compensate CSEs for the computer boot up tasks.

81.    Instead, Defendant maintains attendance policies that require them to be call-ready at the moment they clock-in and prohibit them from recording hours outside of their regularly scheduled shifts.

82.    Furthermore, Defendant regularly rolled out system updates and bug fixes, which extended the process of getting clocked in for their scheduled shifts. As a result, CSEs were regularly required to begin the computer bootup process well in advance of their shift in the event that Defendant had implemented system updates, bug fixes, or patches the night before. Failure to do so required the CSE to risk being late for work due to said system updates.

83.    As a result, Defendant maintains a common plan and policy pursuant to which they fail to pay CSEs for no less than ten (10) minutes per day of work performed in connection with the above pre-shift activities.

### B.    Meal-Period Off-the-Clock Work

84.    Defendant provides their CSEs with one (1) thirty (30) minute unpaid lunch break per shift.

85.    In reality, Defendant routinely requires CSEs to perform work during their unpaid lunch breaks.

86.    Defendant does not provide CSEs with a bona fide meal period because its policies and procedures require CSEs to return from their lunch early to perform at least part of the boot up process outlined above.

87.     On most days, CSEs spend approximately three (3) to four (4) minutes performing this work during their unpaid meal breaks on most days, however, such time is even greater, when CSEs are required to do a complete reboot.

88.     Defendant's management is aware that this was Plaintiffs' and other CSEs' practice to perform these tasks off the clock, and could have paid CSEs for this time, but did not.

## C.     Post-Shift Off-the-Clock Work

89.      Pursuant to Defendant's policies, training and direction, Defendant's CSEs are required at the end of each shift to log out of the essential computer software programs and applications utilized during their shifts. Additionally, as stated above, they are asked to completely shut down their computers to allow for overnight updates to be installed properly.

90.     The shutdown and logout process, along with post-shift claims processing, requires another one (1) to two (2) minutes of off the clock work per shift.

91.     Pursuant to Defendant's policies, training and direction, Plaintiffs and the other CSEs are not allowed begin the shutdown and logout process until their scheduled shift ends and they complete their last call.

92.     Defendant did not compensate CSEs for all the time spent shutting down and logging out of their essential work systems.

93.     The unpaid off-the-clock work performed after each shift by Plaintiffs and all other CSEs directly benefits Defendant, and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as CSEs.

## D.     Defendant Benefitted From the Uncompensated Off-the-Clock Work

94.     At all relevant times, Defendant directed and directly benefitted from the work

performed by Plaintiffs and similarly situated employees in connection with the above-described pre-shift, meal-period and post-shift activities performed by CSEs.

95.    At all relevant times, Defendant controlled the work schedules, duties, protocols, applications, assignments and employment conditions of their CSEs.

96.    At all relevant times, Defendant was able to track the amount of time CSEs spent in connection with the pre-shift, meal-period and post-shift activities.

97.    Defendant failed to do so and failed to compensate CSEs for the off-the-clock work they performed.

98.    At all relevant times, Defendant used their attendance, adherence and timekeeping policies against the CSEs in order to pressure them into performing the pre-shift, meal-period and post-shift off-the-clock work.

99.    Defendant expressly trained and instructed CSEs to perform the above-described pre-shift activities *before* the start of their scheduled shifts, to ensure they were prepared to take or make calls (i.e., were "phone ready") the moment they clocked in for their shifts.

100.    At all relevant times, Defendant's policies and practices deprived CSEs of wages owed for the pre-shift, meal-period and post-shift activities they performed.

101.    Because Defendant's CSEs typically worked forty (40) hours or more in a workweek, Defendant's policies and practices also deprived them of overtime pay in many workweeks.

102.    Defendant knew or should have known that the time spent by CSEs in connection with the pre-shift, meal-period and post-shift activities was compensable under the law.

103.    Despite knowing CSEs performed work before and after their scheduled shifts and during their unpaid meal periods, Defendant failed to make any effort to stop or disallow the off-

the-clock work and instead suffered and permitted it to happen.

104.    Unpaid wages related to the off-the-clock work described herein are owed to CSEs at the overtime premium of one and one-half times their regular hourly rate because CSEs regularly worked in excess of forty (40) hours in a workweek.

## RULE 23 COLORADO CLASS ACTION ALLEGATIONS

105.    Plaintiff Simmons brings this action pursuant to Fed. R. Civ. P. 23(b)(3) on her own behalf and on behalf of:

> *All current and former CSEs who worked for Defendant in Colorado at any time during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 Colorado Class"). Plaintiff Simmons reserves the right to amend the putative class definition if necessary.

106.    The members of the Rule 23 Colorado Class are so numerous that joinder of all Rule 23 Colorado Class members in this case would be impractical.

107.    Plaintiff Simmons reasonably estimates that there are hundreds of Rule 23 Colorado members. Rule 23 Colorado Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

108.    There is a well-defined community of interest among Rule 23 Colorado Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Colorado Class.

109.     These common legal and factual questions include, but are not limited to, the following:

> a.    Whether the pre-and post-shift time Rule 23 Colorado Class members spend on start-up/log-in activities, attending meetings, and shut-down activities off the clock each shift is compensable time;
>
> b.    Whether Defendant failed to pay all "wages" owed to the Rule 23

15

Colorado Class, as contemplated by CMWA;

c.  Whether Defendant unlawfully withheld or diverted wages from the Rule 23 Colorado Class in violation of the CMWA;

d.  Whether Defendant properly furnished each Rule 23 Colorado Class Member with an itemized statement showing the gross pay and deductions;

e.  Whether Defendant failed to timely pay all wages owed to the Rule 23 Colorado Class, as required by CMWA; and

f.  Whether the Rule 23 Colorado Class members are owed wages for time spent performing pre-, mid-, and post-shift activities discussed herein, as well as time reported by the Rule 23 Colorado Class but otherwise not paid, and if so, the appropriate amount thereof.

110.    Plaintiff Simmons' claims are typical of those of the Rule 23 Colorado Class in that she and all other Rule 23 Colorado Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices.

111.    Plaintiff Simmons' claims arise from the same policies, practices, promises and course of conduct as all other Rule 23 Colorado Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Colorado Class members.

112.    Plaintiff Simmons will fully and adequately protect the interests of the Rule 23 Colorado Class and she has retained counsel who are qualified and experienced in the prosecution of Colorado wage and hour class actions.

113.    Neither Plaintiff Simmons nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Colorado Class.

114.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Colorado Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

115.    Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

116.    This case will be manageable as a Rule 23 Class action. Plaintiff Simmons and her counsel know of no unusual difficulties in this case and Defendant has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

117.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

118.    Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Colorado Class and declaratory relief is appropriate in this case with respect to the Rule 23 Colorado Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

119.    Because Defendant continues to refuse to pay its workers for each and every hour worked, by failing to maintain and account for accurate recordkeeping, the Colorado Class seeks an order from this Court enjoining Defendant from its continued violation of Colorado law and for an award of civil penalties.

120.    Defendant has acted and refused to act on grounds that apply generally to the Class, and because declaratory relief is appropriate in the case with respect to the Colorado Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## RULE 23 ILLINOIS CLASS ACTION ALLEGATIONS

121.    Plaintiff Britton brings this action pursuant to Fed. R. Civ. P. 23(b)(3) on her own

behalf and on behalf of:

> *All current and former CSEs who worked for Defendant in Illinois at any time during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 Illinois Class"). Plaintiff Britton reserves the right to amend the putative class definition if necessary.

122.    The members of the Rule 23 Illinois Class are so numerous that joinder of all Rule 23 Illinois Class members in this case would be impractical.

123.    Plaintiff Britton reasonably estimates that there are hundreds of Rule 23 Illinois members. Rule 23 Illinois Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

124.    There is a well-defined community of interest among Rule 23 Illinois Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Illinois Class.

125.    These common legal and factual questions include, but are not limited to, the following:

> a.  Whether the pre-and post-shift time Rule 23 Illinois Class members spend on start-up/log-in activities, attending meetings, and shut-down activities off the clock each shift is compensable time;
>
> b.  Whether Defendant failed to pay all "wages" owed to the Rule 23 Illinois Class, as contemplated by the IMWL and IWPCA;
>
> c.  Whether Defendant unlawfully withheld or diverted wages from the Rule 23 Illinois Class in violation of the IMWL and IWPCA;
>
> d.  Whether Defendant properly furnished each Rule 23 Illinois Class Member with an itemized statement showing the gross pay and deductions;
>
> e.  Whether Defendant failed to timely pay all wages owed to the Rule 23 Illinois Class, as required by IMWL and IWPCA; and

      f.   Whether the Rule 23 Illinois Class members are owed wages for time spent performing pre-, mid-, and post-shift activities discussed herein, as well as time reported by the Rule 23 Illinois Class but otherwise not paid, and if so, the appropriate amount thereof.

126.    Plaintiff Britton's claims are typical of those of the Rule 23 Illinois Class in that she and all other Rule 23 Illinois Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices.

127.    Plaintiff Britton's claims arise from the same policies, practices, promises and course of conduct as all other Rule 23 Illinois Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Illinois Class members.

128.    Plaintiff Britton will fully and adequately protect the interests of the Rule 23 Illinois Class and she has retained counsel who are qualified and experienced in the prosecution of Illinois wage and hour class actions.

129.    Neither Plaintiff Britton nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Illinois Class.

130.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Illinois Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

131.    Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

132.    This case will be manageable as a Rule 23 Class action. Plaintiff Britton and her counsel know of no unusual difficulties in this case and Defendant has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

133.     Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

134.     Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Illinois Class and declaratory relief is appropriate in this case with respect to the Rule 23 Illinois Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

135.     Because Defendant continues to refuse to pay its workers for each and every hour worked, by failing to maintain and account for accurate recordkeeping, the Illinois Class seeks an order from this Court enjoining Defendant from its continued violation of the IMWL and IWPCA and for an award of civil penalties.

136.     Defendant has acted and refused to act on grounds that apply generally to the Class, and because declaratory relief is appropriate in the case with respect to the Illinois Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## RULE 23 NORTH CAROLINA CLASS ACTION ALLEGATIONS

137.     Plaintiff Atkinson brings this action pursuant to Fed. R. Civ. P. 23(b)(3) on her own behalf and on behalf of:

> ***All current and former CSEs who worked for Defendant in North Carolina at any time during the applicable statutory period***.

(hereinafter referred to as the "Rule 23 North Carolina Class"). Plaintiff Atkinson reserves the right to amend the putative class definition if necessary.

138.     The members of the Rule 23 North Carolina Class are so numerous that joinder of all Rule 23 North Carolina Class members in this case would be impractical.

139.     Plaintiff Atkinson reasonably estimates that there are hundreds of Rule 23 North

Carolina members. Rule 23 North Carolina Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

140.    There is a well-defined community of interest among Rule 23 North Carolina Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 North Carolina Class.

141.    These common legal and factual questions include, but are not limited to, the following:

> a.  Whether the pre-and post-shift time Rule 23 North Carolina Class members spend on start-up/log-in activities, attending meetings, and shut-down activities off the clock each shift is compensable time;
>
> b.  Whether Defendant failed to pay all "wages" owed to the Rule 23 North Carolina Class, as contemplated by NCWHA;
>
> c.  Whether Defendant unlawfully withheld or diverted wages from the Rule 23 North Carolina Class in violation of the NCWHA;
>
> d.  Whether Defendant properly furnished each Rule 23 North Carolina Class Member with an itemized statement showing the gross pay and deductions;
>
> e.  Whether Defendant failed to timely pay all wages owed to the Rule 23 North Carolina Class, as required by NCWHA; and
>
> f.  Whether the Rule 23 North Carolina Class members are owed wages for time spent performing pre-, mid-, and post-shift activities discussed herein, as well as time reported by the Rule 23 North Carolina Class but otherwise not paid, and if so, the appropriate amount thereof.

142.    Plaintiff Atkinson's claims are typical of those of the Rule 23 North Carolina Class in that she and all other Rule 23 North Carolina Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices.

143.    Plaintiff Atkinson's claims arise from the same policies, practices, promises and course of conduct as all other Rule 23 North Carolina Class members' claims and her legal theories

are based on the same legal theories as all other Rule 23 North Carolina Class members.

144.    Plaintiff Atkinson will fully and adequately protect the interests of the Rule 23 North Carolina Class and she has retained counsel who are qualified and experienced in the prosecution of North Carolina wage and hour class actions.

145.    Neither Plaintiff Atkinson nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 North Carolina Class.

146.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 North Carolina Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

147.    Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

148.    This case will be manageable as a Rule 23 Class action. Plaintiff Atkinson and her counsel know of no unusual difficulties in this case and Defendant has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

149.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate.  *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

150.    Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 North Carolina Class and declaratory relief is appropriate in this case with respect to the Rule 23 North Carolina Class as a whole, class certification pursuant to Rule 23(b)(2) is also

appropriate.

151.    Because Defendant continues to refuse to pay its workers for each and every hour worked, by failing to maintain and account for accurate recordkeeping, the North Carolina Class seeks an order from this Court enjoining Defendant from its continued violation of North Carolina law and for an award of civil penalties.

152.    Defendant has acted and refused to act on grounds that apply generally to the Class, and because declaratory relief is appropriate in the case with respect to the North Carolina Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## **RULE 23 NEVADA CLASS ACTION ALLEGATIONS**

153.    Plaintiff Waller brings this action pursuant to Fed. R. Civ. P. 23(b)(3) on his own behalf and on behalf of:

> ***All current and former CSEs who worked for Defendant in Nevada at any time during the applicable statutory period***.

(hereinafter referred to as the "Rule 23 Nevada Class"). Plaintiff Waller reserves the right to amend the putative class definition if necessary.

154.    The members of the Rule 23 Nevada Class are so numerous that joinder of all Rule 23 Nevada Class members in this case would be impractical.

155.    Plaintiff Waller reasonably estimates that there are hundreds of Rule 23 Nevada members. Rule 23 Nevada Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

156.    There is a well-defined community of interest among Rule 23 Nevada Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nevada Class.

157.    These common legal and factual questions include, but are not limited to, the

following:

    a.  Whether the pre-and post-shift time Rule 23 Nevada Class members spend on start-up/log-in activities, attending meetings, and shut-down activities off the clock each shift is compensable time;

    b.  Whether Defendant failed to pay all "wages" owed to the Rule 23 Nevada Class, as contemplated by Nevada law;

    c.  Whether Defendant unlawfully withheld or diverted wages from the Rule 23 Nevada Class in violation of Nevada law;

    d.  Whether Defendant properly furnished each Rule 23 Nevada Class Member with an itemized statement showing the gross pay and deductions;

    e.  Whether Defendant failed to timely pay all wages owed to the Rule 23 Nevada Class, as required by Nevada law; and

    f.  Whether the Rule 23 Nevada Class members are owed wages for time spent performing pre-, mid-, and post-shift activities discussed herein, as well as time reported by the Rule 23 Nevada Class but otherwise not paid, and if so, the appropriate amount thereof.

158.    Plaintiff Waller's claims are typical of those of the Rule 23 Nevada Class in that he and all other Rule 23 Nevada Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices.

159.    Plaintiff Waller's claims arise from the same policies, practices, promises and course of conduct as all other Rule 23 Nevada Class members' claims and his legal theories are based on the same legal theories as all other Rule 23 Nevada Class members.

160.    Plaintiff Waller will fully and adequately protect the interests of the Rule 23 Nevada Class and he has retained counsel who are qualified and experienced in the prosecution of Nevada wage and hour class actions.

161.    Neither Plaintiff Waller nor his counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nevada Class.

162.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nevada Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

163.    Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

164.    This case will be manageable as a Rule 23 Class action. Plaintiff Waller and his counsel know of no unusual difficulties in this case and Defendant has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

165.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

166.    Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Nevada Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nevada Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

167.    Because Defendant continues to refuse to pay its workers for each and every hour worked, by failing to maintain and account for accurate recordkeeping, the Nevada Class seeks an order from this Court enjoining Defendant from its continued violation of Nevada law and for an award of civil penalties.

168.    Defendant has acted and refused to act on grounds that apply generally to the Class, and because declaratory relief is appropriate in the case with respect to the Nevada Class as a

whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## RULE 23 NEW YORK CLASS ACTION ALLEGATIONS

169.     Plaintiff Williams brings this action pursuant to Fed. R. Civ. P. 23(b)(3) on her own behalf and on behalf of:

> ***All current and former CSEs who worked for Defendant in New York at
> any time during the applicable statutory period***.

(hereinafter referred to as the "Rule 23 New York Class"). Plaintiff Williams reserves the right to amend the putative class definition if necessary.

170.     The members of the Rule 23 New York Class are so numerous that joinder of all Rule 23 New York Class members in this case would be impractical.

171.     Plaintiff Williams reasonably estimates that there are hundreds of Rule 23 New York members. Rule 23 New York Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

172.     There is a well-defined community of interest among Rule 23 New York Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 New York Class.

173.     These common legal and factual questions include, but are not limited to, the following:

   a.   Whether the pre-and post-shift time Rule 23 New York Class members
        spend on start-up/log-in activities, attending meetings, and shut-down
        activities off the clock each shift is compensable time;

   b.   Whether Defendant failed to pay all "wages" owed to the Rule 23 New
        York Class, as contemplated by New York law;

   c.   Whether Defendant unlawfully withheld or diverted wages from the
        Rule 23 New York Class in violation of New York law;

   d.   Whether Defendant failed to properly notify each member of the Rule

23 New York Class in writing at the time of hiring the normal hours and wages agreed upon, the time and place of payment, and the deductions made from their wages;

e.  Whether Defendant properly furnished each Rule 23 New York Class Member with an itemized statement showing the gross pay and deductions;

f.  Whether Defendant failed to timely pay all wages owed to the Rule 23 New York Class, as required by New York law; and

g.  Whether the Rule 23 New York Class members are owed wages for time spent performing pre-, mid-, and post-shift activities discussed herein, as well as time reported by the Rule 23 New York Class but otherwise not paid, and if so, the appropriate amount thereof.

174.  Plaintiff Williams' claims are typical of those of the Rule 23 New York Class in that she and all other Rule 23 New York Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices.

175.  Plaintiff Williams' claims arise from the same policies, practices, promises and course of conduct as all other Rule 23 New York Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 New York Class members.

176.  Plaintiff Williams will fully and adequately protect the interests of the Rule 23 New York Class and she has retained counsel who are qualified and experienced in the prosecution of New York wage and hour class actions.

177.  Neither Plaintiff Williams nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 New York Class.

178.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 New York Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

179.    Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

180.    This case will be manageable as a Rule 23 Class action. Plaintiff Williams and her counsel know of no unusual difficulties in this case and Defendant has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

181.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

182.    Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 New York Class and declaratory relief is appropriate in this case with respect to the Rule 23 New York Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

183.    Because Defendant continues to refuse to pay its workers for each and every hour worked, by failing to maintain and account for accurate recordkeeping, the New York Class seeks an order from this Court enjoining Defendant from its continued violation of New York law and for an award of civil penalties.

184.    Defendant has acted and refused to act on grounds that apply generally to the Class, and because declaratory relief is appropriate in the case with respect to the New York Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## RULE 23 PENNSYLVANIA CLASS ACTION ALLEGATIONS

185.    Plaintiff Taylor brings this action pursuant to Fed. R. Civ. P. 23(b)(3) on her own

behalf and on behalf of:

> *All current and former CSEs who worked for Defendant in Pennsylvania at any time during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 Pennsylvania Class"). Plaintiff Taylor reserves the right to amend the putative class definition if necessary.

186.    The members of the Rule 23 Pennsylvania Class are so numerous that joinder of all Rule 23 Pennsylvania Class members in this case would be impractical.

187.    Plaintiff Taylor reasonably estimates that there are hundreds of Rule 23 Pennsylvania members. Rule 23 Pennsylvania Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

188.    There is a well-defined community of interest among Rule 23 Pennsylvania Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Pennsylvania Class.

189.    These common legal and factual questions include, but are not limited to, the following:

> a.    Whether the pre-and post-shift time Rule 23 Pennsylvania Class members spend on start-up/log-in activities, attending meetings, and shut-down activities off the clock each shift is compensable time;
>
> b.    Whether Defendant failed to pay all "wages" owed to the Rule 23 Pennsylvania Class, as contemplated by the PMWA and the PWPCL;
>
> c.    Whether Defendant unlawfully withheld or diverted wages from the Rule 23 Pennsylvania Class in violation of the PMWA and the PWPCL;
>
> d.    Whether Defendant properly furnished each Rule 23 Pennsylvania Class Member with an itemized statement showing the gross pay and deductions;
>
> e.    Whether Defendant failed to timely pay all wages owed to the Rule 23 Pennsylvania Class, as required by PMWA and the PWPCL; and

f.   Whether the Rule 23 Pennsylvania Class members are owed wages for time spent performing pre-, mid-, and post-shift activities discussed herein, as well as time reported by the Rule 23 Pennsylvania Class but otherwise not paid, and if so, the appropriate amount thereof.

190.   Plaintiff Taylor's claims are typical of those of the Rule 23 Pennsylvania Class in that she and all other Rule 23 Pennsylvania Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices.

191.   Plaintiff Taylor's claims arise from the same policies, practices, promises and course of conduct as all other Rule 23 Pennsylvania Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Pennsylvania Class members.

192.   Plaintiff Taylor will fully and adequately protect the interests of the Rule 23 Pennsylvania Class and she has retained counsel who are qualified and experienced in the prosecution of Pennsylvania wage and hour class actions.

193.   Neither Plaintiff Taylor nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Pennsylvania Class.

194.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Pennsylvania Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

195.   Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

196.   This case will be manageable as a Rule 23 Class action. Plaintiff Taylor and her counsel know of no unusual difficulties in this case and Defendant has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

197.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

198.    Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Pennsylvania Class and declaratory relief is appropriate in this case with respect to the Rule 23 Pennsylvania Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

199.    Because Defendant continues to refuse to pay its workers for each and every hour worked, by failing to maintain and account for accurate recordkeeping, the Pennsylvania Class seeks an order from this Court enjoining Defendant from its continued violation of the PMWA and the PWPCL and for an award of civil penalties.

200.    Defendant has acted and refused to act on grounds that apply generally to the Class, and because declaratory relief is appropriate in the case with respect to the Pennsylvania Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## **RULE 23 UTAH CLASS ACTION ALLEGATIONS**

201.    Plaintiff Rewis brings this action pursuant to Fed. R. Civ. P. 23(b)(3) on his own behalf and on behalf of:

> *All current and former CSEs who worked for Defendant in Utah at any time during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 Utah Class"). Plaintiff Rewis reserves the right to amend the putative class definition if necessary.

202.    The members of the Rule 23 Utah Class are so numerous that joinder of all Rule 23 Utah Class members in this case would be impractical.

203.    Plaintiff Rewis reasonably estimates that there are hundreds of Rule 23 Utah members. Rule 23 Utah Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

204.    There is a well-defined community of interest among Rule 23 Utah Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Utah Class.

205.    These common legal and factual questions include, but are not limited to, the following:

a.    Whether the pre-and post-shift time Rule 23 Utah Class members spend on start-up/log-in activities, attending meetings, and shut-down activities off the clock each shift is compensable time;

b.    Whether Defendant failed to pay all "wages" owed to the Rule 23 Utah Class, as contemplated by Utah law;

c.    Whether Defendant unlawfully withheld or diverted wages from the Rule 23 Utah Class in violation of Utah law;

d.    Whether Defendant properly furnished each Rule 23 Utah Class Member with an itemized statement showing the gross pay and deductions;

e.    Whether Defendant failed to timely pay all wages owed to the Rule 23 Utah Class, as required by Utah law; and

f.    Whether the Rule 23 Utah Class members are owed wages for time spent performing pre-, mid-, and post-shift activities discussed herein, as well as time reported by the Rule 23 Utah Class but otherwise not paid, and if so, the appropriate amount thereof.

206.    Plaintiff Rewis' claims are typical of those of the Rule 23 Utah Class in that he and all other Rule 23 Utah Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices.

207.    Plaintiff Rewis' claims arise from the same policies, practices, promises and course

of conduct as all other Rule 23 Utah Class members' claims and his legal theories are based on the same legal theories as all other Rule 23 Utah Class members.

208.    Plaintiff Rewis will fully and adequately protect the interests of the Rule 23 Utah Class and he has retained counsel who are qualified and experienced in the prosecution of Utah wage and hour class actions.

209.    Neither Plaintiff Rewis nor his counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Utah Class.

210.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Utah Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

211.    Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

212.    This case will be manageable as a Rule 23 Class action. Plaintiff Rewis and his counsel know of no unusual difficulties in this case and Defendant has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

213.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

214.    Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Utah Class and declaratory relief is appropriate in this case with respect to the Rule 23

Utah Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

215.    Because Defendant continues to refuse to pay its workers for each and every hour worked, by failing to maintain and account for accurate recordkeeping, the Utah Class seeks an order from this Court enjoining Defendant from its continued violation of Utah law and for an award of civil penalties.

216.    Defendant has acted and refused to act on grounds that apply generally to the Class, and because declaratory relief is appropriate in the case with respect to the Utah Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## RULE 23 VIRGINA CLASS ACTION ALLEGATIONS

217.    Plaintiff Clarke brings this action pursuant to Fed. R. Civ. P. 23(b)(3) on her own behalf and on behalf of:

> *All current and former CSEs who worked for Defendant in Virgina at any time during the applicable statutory period*.

(hereinafter referred to as the "Rule 23 Virgina Class"). Plaintiff Clarke reserves the right to amend the putative class definition if necessary.

218.    The members of the Rule 23 Virgina Class are so numerous that joinder of all Rule 23 Virgina Class members in this case would be impractical.

219.    Plaintiff Clarke reasonably estimates that there are hundreds of Rule 23 Virgina members. Rule 23 Virgina Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

220.    There is a well-defined community of interest among Rule 23 Virgina Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Virgina Class.

221.    These common legal and factual questions include, but are not limited to, the

following:

    a.  Whether the pre-and post-shift time Rule 23 Virgina Class members spend on start-up/log-in activities, attending meetings, and shut-down activities off the clock each shift is compensable time;

    b.  Whether Defendant failed to pay all "wages" owed to the Rule 23 Virgina Class, as contemplated by the VPWA;

    c.  Whether Defendant unlawfully withheld or diverted wages from the Rule 23 Virgina Class in violation of the VPWA;

    d.  Whether Defendant properly furnished each Rule 23 Virgina Class Member with an itemized statement showing the gross pay and deductions;

    e.  Whether Defendant failed to timely pay all wages owed to the Rule 23 Virgina Class, as required by VPWA; and

    f.  Whether the Rule 23 Virgina Class members are owed wages for time spent performing pre-, mid-, and post-shift activities discussed herein, as well as time reported by the Rule 23 Virgina Class but otherwise not paid, and if so, the appropriate amount thereof.

222.    Plaintiff Clarke's claims are typical of those of the Rule 23 Virgina Class in that she and all other Rule 23 Virgina Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices.

223.    Plaintiff Clarke's claims arise from the same policies, practices, promises and course of conduct as all other Rule 23 Virgina Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Virgina Class members.

224.    Plaintiff Clarke will fully and adequately protect the interests of the Rule 23 Virgina Class and she has retained counsel who are qualified and experienced in the prosecution of Virgina wage and hour class actions.

225.    Neither Plaintiff Clarke nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Virgina Class.

226. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Virgina Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

227. Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

228. This case will be manageable as a Rule 23 Class action. Plaintiff Clarke and her counsel know of no unusual difficulties in this case and Defendant has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

229. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

230. Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Virgina Class and declaratory relief is appropriate in this case with respect to the Rule 23 Virgina Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

231. Because Defendant continues to refuse to pay its workers for each and every hour worked, by failing to maintain and account for accurate recordkeeping, the Virgina Class seeks an order from this Court enjoining Defendant from its continued violation of the VPWA and for an award of civil penalties.

232. Defendant has acted and refused to act on grounds that apply generally to the Class, and because declaratory relief is appropriate in the case with respect to the Virgina Class as a

whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## COUNT I
### (Rule 23 Colorado Class Action)
### Colorado Minimum Wage Act, C.R.S. §§ 8-4-101, *et seq.*;

258.    Plaintiff Simmons re-alleges and incorporates all previous paragraphs herein.

259.    The Colorado Minimum Wage Act (CMWA) governs the activities of and imposes obligations on Defendant as the Colorado Rule 23 Class Members' "employer." C.R.S. § 8-4-101.

260.    The CMWA provides that "[a]ll wages or compensation, other than those mentioned in section 8-4-109, earned by any employee in any employment, other than those specified in subsection (3) of this section, shall be due and payable for regular pay periods of no greater duration than one calendar month or thirty days, whichever is longer, and on regular paydays no later than ten days following the close of each pay period unless the employer and the employee shall mutually agree on any other alternative period of wage or salary payments." C.R.S. § 8-4-103(1)(a).

261.    Defendant failed to pay Plaintiff Simmons and the Rule 23 Colorado Class Members all wages due as required by C.R.S. § 8-4-103(1)(a).

262.    Additionally, Defendant failed to furnish Plaintiff Simmons and the Rule 23 Colorado Class Members with an itemized pay statement in writing showing her gross wages earned and all withholdings and deductions made from her wages for each pay period. C.R.S. § 8-4-103(4)(a)-(b).

263.    Defendant unlawfully withheld or diverted the wages of Plaintiff Simmons and the Rule 23 Colorado Class Members, in violation of C.R.S. § 8-4-103(4)(a)-(b).

264.    Defendant failed to pay all wages immediately due at the time of discharge in violation of C.R.S. § 8-4-109.

265.    The CMWA provides that "[i]f an employer fails or refuses to pay, in the manner specified in subsection (3)(d) of this section, all earned, vested, and determinable wages or compensation within … fourteen days after a civil action or administrative claim for the wages or compensation is sent to or served on the employer, the employer is liable to the employee or group of similarly situated employees for the amount of the earned, vested, determinable, and unpaid wages or compensation plus an automatic penalty of the greater of two times the amount of the unpaid wages or compensation or one thousand dollars;  if the employee can show that the employer's failure or refusal to pay wages or compensation was willful, the greater of three times the amount of the unpaid wages or compensation or three thousand dollars." C.R.S. § 8-4-109

266.    The CMWA provides for a three-year (3) statute of limitations on all such civil claims. C.R.S. § 8-4-122.

## COUNT II
### (Rule 23 Illinois Class Action)
### Illinois Minimum Wage Laws, 820 ILCS 105/1, *et seq*.;

267.    Plaintiff Britton re-alleges and incorporates all previous paragraphs herein.

268.    The Illinois Minimum Wage Law (IMWL) governs the activities of and imposes obligations on Defendant as the Illinois Rule 23 Class Members' "employer." 820 ILCS 105/3(c).

269.    The IMWL require employers to maintain detailed records regarding the payment of wages to employees, which includes the actual hours worked each week. 820 ILCS 105/8. IMWL requires overtime to be paid at 1.5 times the employee's regular hourly rate for all hours worked in excess of 40 in a workweek. 820 ILCS 105/4a(1).

270.    Under the IMWL, Defendant was obligated to pay Plaintiff Britton and the Rule 23 Illinois Class Members no less than the statutory minimum wage for every hour worked. Defendant knowingly failed to pay the required minimum wage rate for all compensable time worked.

271.    Accordingly, Plaintiff Britton and the Rule 23 Illinois Class Members are entitled to recover unpaid overtime compensation for hours worked in excess of 40 in a workweek, treble damages, as well as monthly statutory damages on these amounts at the highest applicable rates, plus attorneys' fees, costs, and expenses. *See* 820 ILCS 105/12(a).

### COUNT III
### (Rule 23 Illinois Class Action)
### Illinois Wage Payment and Collection Act, 820 ILCS 115/1, *et seq.*;

272.    Plaintiff Britton re-alleges and incorporates all previous paragraphs herein.

273.    The Illinois Wage Payment and Collection Act (IWPCA) governs the activities of and imposes obligations on Defendant as the Illinois Rule 23 Class Members' "employer." 820 ILCS 115/2.

274.    The IWPCA provides that "[e]very employer shall be required, at least semi-monthly, to pay every employee all wages earned during the semi-monthly pay period." 820 ILCS 115/3.

275.    The IWPCA requires an employer to pay all wages earned by an employee who is paid on a weekly basis no later than the week following the end of the pay period in which the wages were earned.  820 ILCS 115/4.

276.    Furthermore, the IWPCA provides that "deductions by employers from wages or final compensation are prohibited unless such deductions are (1) required by law; (2) to the benefit of the employee; (3) in response to a valid wage assignment or wage deduction order; (4) made with the express written consent of the employee, given freely at the time the deduction is made …" 820 ILCS 115/9.

277.    The IWPCA states that an employer is to pay all wages earned by an employee upon separation, or in any event no later than the next regularly scheduled payday following

separation. 820 ILCS 115/5.

278.    The IWPCA requires employers to pay employees, including Plaintiff Britton and the Rule 23 Illinois Class Members, for all the hours they work at the rate(s) agreed to by the parties.

279.    Defendant failed to timely pay earned wages to Plaintiff Britton and the Rule 23 Illinois Class Members as a result of unlawful deductions made against the earned wages of Plaintiff Britton and the Rule 23 Illinois Class Members in violation of 820 ILCS 115/9.

280.    Defendant knowingly permitted Plaintiff Britton and the Rule 23 Illinois Class Members to perform work without proper compensation and withheld or delayed payment of earned wages unlawfully, in violation of the IWPCA.

281.    The IWPCA permits Plaintiff Britton and the Rule 23 Illinois Class Members to recover the amount of any wages that are not timely paid and damages of 5% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid, with recovery of costs and all reasonable attorney's fees.  820 ILCS 115/14(a).

<u>**COUNT IV**</u>
**(Rule 23 North Carolina Class Action)**
**North Carolina Wage and Hour Act, N.C.G.S.A. § 95-25.1, *et.seq.*:**

282.    Plaintiff Atkinson re-alleges and incorporates all previous paragraphs herein.

283.    At all relevant times, Defendant qualified as an "employer" and Plaintiff qualified as an "employee" within the meaning of the North Carolina Wage and Hour Act (NCWHA), N.C.G.S.A. § 95-25.2.

284.    "Wages" means "[c]ompensation for labor or services rendered by an employee whether determined on a time, task, piece, job, day, commission, or other basis of calculation, and

the reasonable cost as determined by the Commissioner of furnishing employees with board, lodging, or other facilities. For the purposes of G.S. 95-25.6 through G.S. 95-25.13 "wage" includes sick pay, vacation pay, severance pay, commissions, bonuses, and other amounts promised when the employer has a policy or a practice of making such payments." N.C.G.S.A. § 95-25.2(16).

285.    Pursuant to North Carolina Act, N.C.G.S.A. § 95-25.1, *et.seq.*, it is unlawful for an employer to suffer or permit an employee to work without paying promised and earned wages for all hours worked.

286.    Pursuant to North Carolina Act, N.C.G.S.A. § 95-25.6, Defendant was required to pay Plaintiff all wages, when due, for all hours of work at her regular rate on their regular pay day.

287.    Defendant did not pay Plaintiff all wages due to her for non-overtime hours as a result of the illegal work off-the-clock.

288.    At all times relevant, Defendant had knowledge of all work completed by Plaintiff and Defendant permitted Plaintiff to perform such work and did not pay her the promised wages for hours worked.

289.    Accordingly, Plaintiff is entitled to receive all compensation of non-overtime "wages" due and owing to her.

290.    Defendant willfully failed to pay Plaintiff all "wages," and withheld such wages as defined in §§ 95-25.1 and 95.25.8 of the North Carolina Act for all work performed, according to the law.

291.    Defendant has withheld wages of Plaintiff without providing advance notice of such amounts and absent any lawfully sufficient reason for such conduct. N.C.G.S.A. §§ 95-25.8 and 95-25.13.

292.    As a direct and proximate result of Defendant's willful conduct, Plaintiff has suffered substantial losses and is entitled to recover her unpaid wages, liquidated damages, and attorneys' fees and costs pursuant to North Carolina Wage and Hour Act, N.C.G.S.A. § 95-25.22.

### COUNT V
**(Rule 23 Nevada Class Action)**
**Nevada Payment and Collection of Wages and Other Benefits,**
**Failure to Pay Wages for All Hours Worked in Violation of N.R.S. §§ 608.140 AND 608.016**

293.    Plaintiff Waller re-alleges and incorporates all previous paragraphs herein.

294.    The Nevada Payment and Collection of Wages and Other Benefits (NPCW) governs the activities of and imposes obligations on Defendant as the Nevada Rule 23 Class Members' "employer." N.R.S. § 608.011.

295.    NRS 608.140 provides that an employee has a private right of action for unpaid wages: "Whenever a mechanic, artisan, miner, laborer, servant or employee shall have cause to bring suit for wages earned and due according to the terms of his or her employment, and shall establish by decision of the court or verdict of the jury that the amount for which he or she has brought suit is justly due, and that a demand has been made, in writing, at least 5 days before suit was brought, for a sum not to exceed the amount so found due, the court before which the case shall be tried shall allow to the plaintiff a reasonable attorney fee, in addition to the amount found due for wages and penalties, to be taxed as costs of suit." Plaintiff Waller and the Rule 23 Nevada Class Members has made a demand for unpaid wages upon Defendant pursuant to NRS 608.140, but satisfactory payment was not received.

296.    At all relevant times, Defendant employed Plaintiff Waller and the Rule 23 Nevada Class Members as "employees" within the meaning of NRS 608.010.

297.    NRS 608.016 requires an employer like Defendant to pay employees wages (as defined by NRS 608.012) "for each hour the employee works."

298.    Defendant did not pay Plaintiff Waller and the Rule 23 Nevada Class Members wages for each hour worked.

299.    As a result of Defendant's failure to pay Plaintiff Waller and the Rule 23 Nevada Class Members wages for each hour worked, Defendant violated NRS 608.016.

300.    Plaintiff Waller and the Rule 23 Nevada Class Members are entitled to their regular rate of pay for all hours worked during the relevant time period together with attorneys' fees, costs, and interest as provided by law

## COUNT VI
### (Rule 23 Nevada Class Action)
### Nev. Const. Art. XV, Sec. 16, Failure to Pay Minimum Wages

301.    Plaintiff Waller re-alleges and incorporates all previous paragraphs herein.

302.    At all relevant times, Defendant was and is an "employer" within the meaning of Nev. Const. Art. XV, Sec. 16.

303.    At all relevant times, Defendant employed Plaintiff Waller and the Rule 23 Nevada Class Members as "employees" within the meaning of Nev. Const. Art. XV, Sec. 16.

304.    Nev. Const. Art. XV, Sec. 16. sets forth the requirements the minimum wage requirements in the State of Nevada and further provides that "[t]he provisions of the section may not be waived by agreement between an individual employee and an employer.... An employee claiming violation of the section may bring an action against his or her employer in the courts of the State to enforce the provisions of the section and shall be entitled to all remedies available under the law or in equity appropriate to remedy any violation of the section, including but not limited to back pay, damages, reinstatement or injunctive relief. An employee who prevails in any action to enforce the section shall be awarded his or her reasonable attorney's fees and costs."

305.    Defendant did not pay Plaintiff Waller and the Rule 23 Nevada Class Members the requisite minimum wages for all hours worked in each work week.

306.     As a result of Defendants' failure to pay Plaintiff Waller and the Rule 23 Nevada Class Members the requisite wages for each hour worked, Defendant violated Nev. Const. Art. XV, Sec. 16.

307.     Defendant was aware that Plaintiff Waller and the Rule 23 Nevada Class Members were entitled to a minimum wage guaranteed by Nev. Const. Art. XV, Sec. 16.

308.     Defendants' failure to pay Plaintiff Waller and the Rule 23 Nevada Class Members all wages due was willful and not the result of mistake or inadvertence.

309.     Plaintiff Waller and the Rule 23 Nevada Class Members are entitled to all unpaid wages, pre and post judgment interest due on such sums at the highest rate permitted by law, exemplary and punitive damages, and for their attorneys' fees and costs.

## COUNT VII
### Nevada Payment and Collection of Wages and Other Benefits,
### Failure to Pay Overtime Wages in Violation of N.R.S. §§ 608.140 AND 608.018

310.     Plaintiff Waller re-alleges and incorporates all previous paragraphs herein.

311.     At all relevant times, Defendant was and is an "employer" within the meaning of NRS 608.011.

312.     At all relevant times, Defendant employed Plaintiff Waller and the Rule 23 Nevada Class Members as "employees" within the meaning of NRS 608.010.

313.     NRS 608.140 provides that an employee has a private right of action for unpaid wages.

314.     NRS 608.018(1) provides as follows:

> An employer shall pay 1 ½ times an employee's regular wage rate whenever an employee who receives compensation for employment at a rate less than 1 ½ times the minimum rate set forth in NRS 608.250 works: (a) More than 40 hours in any scheduled week of work; or (b) More than 8 hours in any workday unless by mutual

agreement the employee works a scheduled 10 hours per day for 4 calendar days within any scheduled week of work.

315.     NRS 608.018(2) provides as follows:

An employer shall pay 1 ½ times an employee's regular wage rate whenever an employee who receives compensation for employment at a rate not less than 1 ½ times the minimum rate set forth in NRS 608.250 works more than 40 hours in any scheduled week of work.

316.     Defendant did not pay Plaintiff Waller and the Rule 23 Nevada Class Members the requisite overtime wages as defined herein for all overtime hours worked in each work week.

317.     As a result of Defendants' failure to pay Plaintiff Waller and the Rule 23 Nevada Class Members the requisite overtime wages for all overtime hours worked in each workweek, Defendant violated NRS 608.018.

318.     WHEREFORE, Plaintiff Waller and the Rule 23 Nevada Class Members are entitled to all unpaid overtime wages, together with attorneys' fees, costs, and interest as provided by law.

## COUNT VIII
### (Rule 23 New York Class Action)
### New York Labor Law, Article 19 § 650, *et seq*.:

319.     Plaintiff Williams re-alleges and incorporates all previous paragraphs herein.

320.     The New York Labor Law (NYLL) governs the activities of and imposes obligations on Defendant as the New York Rule 23 Class Members' "employer." NYLL, Article 19, § 651.

321.     NYLL mandates payment of a statutory minimum wage, currently established by NYLL, Article 19 § 652, for each hour worked by employees.

322.     "Wage" under NYLL includes "allowances, in the amount determined in accordance with the provisions of this article, for gratuities and, when furnished by the employer

to employees, for meals, lodging, apparel, and other such items, services and facilities". NYLL, Article 19 § 651.

323.    Defendant had policies and practices of requiring Plaintiff Williams and the Rule 23 New York Class Members to perform compensable pre-shift, meal-period, and post-shift work without compensation.

324.    Defendant's failure to pay wages was knowing and willful, demonstrating deliberate disregard for Plaintiff Williams and the Rule 23 New York Class Members rights under the NYLL.

325.    As a result of Defendant's conduct, Plaintiff Williams and the Rule 23 New York Class Members are entitled to unpaid wages, liquidated damages equal to their unpaid wages, prejudgment and post-judgment interest, reasonable attorneys' fees, and costs pursuant to the NYLL.

## COUNT IX
### (Rule 23 New York Class Action)
### Overtime Wages, New York Labor Law, Article 19 § 650, *et seq*.:

326.    Plaintiff Williams re-alleges and incorporates all previous paragraphs herein.

327.    The overtime provisions of the NYLL and its supporting regulations applies to Defendants and protects Plaintiff Williams and the Rule 23 New York Class Members.

328.    Defendants failed to pay Plaintiff Williams and the Rule 23 New York Class Members the premium overtime wages to which they were entitled under the NYLL – at a rate of 1.5 times their regular rate of pay for all hours worked beyond 40 per workweek.

329.    Through its knowing or intentional failure to pay Plaintiff Williams and the Rule 23 New York Class Members the appropriate overtime wages for hours worked in excess of 40 hours per workweek, Defendant willfully violated the NYLL, Article 19, § 650 et seq., and

supporting New York State Department of Labor regulations.

330.     Due to Defendants' violations of the NYLL, Plaintiff Williams and the Rule 23 New York Class Members are entitled to recover from Defendant their unpaid overtime wages, liquidated damages, pre-judgment and post-judgment interest, and reasonable attorneys' fees and costs pursuant to the NYLL.

## COUNT X
### (Rule 23 New York Class Action)
**Proper Annual Wage Notices, New York Labor Law, Article 6 § 190,** *et seq.***:**

331.     Plaintiff Williams re-alleges and incorporates all previous paragraphs herein.

332.     Defendants have failed to furnish pursuant to the NYLL with proper annual wage notices as required by NYLL, Article 6, § 195(1)(a),

> Provide his or her employees, in English or in the language identified by each employee as their primary language, at the time of hiring, a notice containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; … the regular pay day designated by the employer in accordance with NYLL, Article 6, § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

333.     Due to Defendants' violations of NYLL, Article 6, § 195(1), Plaintiff Williams and the Rule 23 New York Class Members are entitled to statutory penalties of fifty dollars each workday that Defendants failed to provide Plaintiff Williams and the Rule 23 New York Class Members with annual wage notices, or a total of five thousand dollars each, and reasonable attorneys' fees and costs, as provided for by NYLL, Article 6, § 198(1-b).

## COUNT XI
### (Rule 23 New York Class Action)
**Accurate Wage Statements, New York Labor Law, Article 6 § 190,** *et seq.***:**

334.     Plaintiff Williams re-alleges and incorporates all previous paragraphs herein.

335.    Defendants failed to supply Plaintiff Williams and the Rule 23 New York Class Members with an accurate statement of wages with every payment of wages as required by NYLL, Article 6, § 195(3), listing: dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof; whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

336.    Due to Defendants' violations of NYLL, Article 6, § 195(3), Plaintiff Williams and the Rule 23 New York Class Members are entitled to statutory penalties of two hundred fifty dollars for each workday that Defendants failed to provide them with accurate wage statements, or a total of five thousand dollars each, and reasonable attorneys' fees and costs, as provided for by NYLL, Article 6, § 198 (1-d).

## COUNT XII
### (Rule 23 New York Class Action)
### Unlawful Wage Deduction, New York Labor Law, Article 6 § 190, *et seq.*:

337.    Plaintiff Williams re-alleges and incorporates all previous paragraphs herein.

338.    NYLL, Article 6, § 193 prohibits an employer from making any deductions from employee wages except as expressly permitted by law or authorized in writing by the employee.

339.    Defendant unlawfully withheld or deducted portions of wages, including compensable time worked pre-shift, during meal-periods, and post-shift, without proper authorization from Plaintiff Williams and the Rule 23 New York Class Members.

340.    Defendant's unauthorized deductions were deliberate and constitute willful violations of the NYLL.

341.    As a result of Defendant's unlawful conduct, Plaintiff Williams and the Rule 23 New York Class Members are entitled to recover amounts of unlawful wage deductions, liquidated damages of these deductions, prejudgment and post-judgment interest, attorneys' fees, costs, and further relief pursuant to NYLL Article 6, § 198.

## COUNT XIII
### (Rule 23 Pennsylvania Class Action)
### Pennsylvania Minimum Wage Act, 43 P.S. § 333.101, *et seq.*;

342.    Plaintiff Taylor re-alleges and incorporates all previous paragraphs herein.

343.    At all relevant times, Plaintiff Taylor and the Rule 23 Pennsylvania Class Members were "employees" under the Pennsylvania Minimum Wage Act (PMWA), 43 P.S. § 333.103(h) to include any individual employed by an employer.

344.    At all relevant times, Defendant is an "employer" as defined by 43 P.S. § 333.103(g), meaning "any individual, partnership, association, corporation, business trust, or any person or group acting directly or indirectly in the interest of an employer in relation to any employee."

345.    The PMWA requires employers to pay employees a minimum wage of at least $7.25 per hour for all hours worked, as specified in 43 P.S. § 333.104(a.1).

346.    The PMWA requires employers to pay employees overtime compensation at a rate "not less than one and one-half times the employee's regular rate" for all hours worked over forty (40) in a workweek.  43 P.S. § 333.104(c).

347.    Defendant maintained policies and practices requiring Plaintiff Taylor and the Rule 23 Pennsylvania Class Members to perform uncompensated work tasks such as pre-shift, meal-period, and post-shift activities.

348.    As a direct and proximate cause, Plaintiff Taylor and the Rule 23 Pennsylvania

Class Members hourly wages fell below the legally mandated minimum wage.

349.     Defendant's failure to pay the statutory minimum wage was willful, intentional, and in violation of the PMWA, demonstrating a deliberate disregard for employee rights under Pennsylvania law.

350.     As a result, Plaintiff Taylor and the Rule 23 Pennsylvania Class Members are entitled to recover all unpaid wages, statutory penalties, liquidated damages, interest, attorneys' fees, and costs pursuant to 43 P.S. § 333.113.

**COUNT XIV**
**(Rule 23 Pennsylvania Class Action)**
**Pennsylvania Wage Payment Collection Law, 43 P.S. § 260.1, *et seq*.;**

351.     Plaintiff Taylor re-alleges and incorporates all previous paragraphs herein.

352.     At all relevant times, Defendant qualifies as an "employer" under the Pennsylvania Wage Payment Collection Law (PWPCL), which "[i]ncludes every person, firm, partnership, association, corporation, receiver or other officer of a court of this Commonwealth and any agent or officer of any of the above-mentioned classes employing any person in this Commonwealth." 43 P.S. § 260(2a).

353.     Under the PWPCL, "[e]very employer shall pay all wages, other than fringe benefits and wage supplements, due to his employes on regular paydays designated in advance by the employer." 43 P.S. § 260.3.

354.     The PWPCL provides that "wages" include "all earnings of an employe, regardless of whether determined on time, task, piece, commission or other method of calculation. The term "wages" also includes fringe benefits or wage supplements whether payable by the employer from his funds or from amounts withheld from the employes' pay by the employer." 43 P.S. § 260(2a).

355.     Defendant consistently failed to pay Plaintiff Taylor and the Rule 23 Pennsylvania

Class Members timely wages for compensable work performed violating the statutory requirements of timely payment established by the WPCL.

356.    Defendant's failure to pay earned wages was intentional, willful, and conducted with disregard for its obligations under Pennsylvania law.

357.    As a result, Plaintiff Taylor and the Rule 23 Pennsylvania Class Members are entitled to recover unpaid wages, liquidated damages amounting to 25% of total wages due or $500.00 per payday violation, whichever is greater, attorneys' fees, costs, pre- and post-judgment interest, and all further relief available under 43 P.S. §§ 260.9a and 260.10.

### COUNT XV
### (Rule 23 Utah Class Action)
### Utah Payment of Wages Act, Utah Code Ann. § 34-28-1, *et seq.*;

358.    Plaintiff Rewis re-alleges and incorporates all previous paragraphs herein.

359.    Under the Utah Payment of Wages Act (UPWA), "wages" are defined broadly to mean "the amounts due the employee for labor or services, whether the amount is fixed or ascertained on a time, task, piece, commission basis or other method of calculating such amount." Utah Code Ann. § 34-28-2(1)(i).

360.    At all relevant times, Defendant qualifies as an "employer" under Utah Code Ann. § 34-28-2(1)(c).

361.    Defendant failed to pay Plaintiff Rewis and the Rule 23 Utah Class Members wages for compensable work performed resulting in unpaid wages due and owing.

362.    Under the UPWA, employers are required to pay wages on designated paydays established by the employer in advance, as mandated by Utah Code Ann. §§ 34-28-3 and 34-28-5

363.    Defendant routinely failed to pay Plaintiff Rewis and the Rule 23 Utah Class Members all earned wages on the designated paydays.

364.    Pursuant to Utah Code Ann. § 34-28-9.5, an employee has a private right of action for a wage claim in court and employers are liable for unpaid wages and penalties for failing to pay wages timely and completely.

365.    Defendant's failure to pay wages was willful and deliberate, resulting in liability for the unpaid wages owed to Plaintiff Rewis and the Rule 23 Utah Class Members.

366.    As a result, Defendant is liable for the total unpaid wages plus a penalty of 2.5% of unpaid wages accruing daily from the date wages became due until paid, attorneys' fees, court costs, and interest, as authorized under Utah Code Ann. §§ 34-28-9.5(3) and 34-27-1.

## COUNT XVI
### (Rule 23 Virgina Class Action)
### Virgina Wage Payment Act, VA. Code 40.1-29, *et seq.*;

367.    Plaintiff Clarke re-alleges and incorporates all previous paragraphs herein.

368.    At all relevant times, Defendant qualified as an "employer" and Plaintiff Clarke and the Rule 23 Virgina Class Members qualified as "employees" within the meaning of the Virginia Wage Payment Act, V.A. CODE ANN. § 40.1-29.2.

369.    Virginia Code § 40.1-29(C) provides that "[n]o employer shall withhold any part of the wages or salaries of any employee except for payroll, wage or withholding taxes or in accordance with the law, without the written and signed authorization of the employee."

370.    At all times relevant, Defendant had knowledge of all work completed by Plaintiff Clarke and the Rule 23 Virginia Class Members and Defendant permitted Plaintiff Clarke and the Rule 23 Virginia Class Members to perform such work and did not pay them their wages for hours worked.

371.    Defendant knew Plaintiff Clarke and the Rule 23 Virginia Class Members were owed wages and failed to pay the wages despite such knowledge.

372.    Defendant did not have an adequate basis for withholding Plaintiff Clarke and the Rule 23 Virginia Class Members wages.

373.    Accordingly, Plaintiff Clarke and the Rule 23 Virginia Class Members are entitled to receive all compensation of "wages" due and owing.

374.    Because Defendants' violations of the Virginia Code have been willful, a three-year statute of limitations applies pursuant to V.A. CODE ANN. § 40.1-29(J).

375.    As a result of Defendants' willful violations of the Virginia Code, Plaintiff Clarke and the Rule 23 Virginia Class Members have suffered damages by being denied wages in accordance with V.A. CODE ANN. § 40.1-29, et seq.

376.    As a direct and proximate result of Defendants' knowingly, willful, and intentional conduct, Plaintiff Clarke and the Rule 23 Virginia Class Members have suffered substantial losses and has been deprived of wages to which they are entitled, including interest at eight (8) per centum per annum and monetary damages in the amount of three (3) times the amount of their unpaid wages as well as costs and reasonable attorneys' fees pursuant to V.A. CODE ANN. § 40.1-29(G) and (J).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on their own behalf, and on behalf of the Rule 23 Classes, request judgment as follows:

a.    Certifying this action as a class action (for the Rule 23 Classes) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiffs state law claims (Counts I-XVI);

b.    Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all the Rule 23 Class members, and permitting Plaintiffs to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the Class members of their rights by law to join and participate in this lawsuit;

c. Designating Plaintiffs as the representatives of their respective state Rule 23 Classes, and undersigned counsel as Class counsel for the same;

d. Declaring Defendant violated Colorado law as cited herein;

e. Declaring Defendant violated Illinois law as cited herein;

f. Declaring Defendant violated North Carolina law as cited herein;

g. Declaring Defendant violated Nevada law as cited herein;

h. Declaring Defendant violated New York law as cited herein;

i. Declaring Defendant violated Pennsylvania law as cited herein;

j. Declaring Defendant violated Utah law as cited herein;

k. Declaring Defendant violated Virginia law as cited herein;

l. Declaring Defendant's violations of the state laws was willful;

m. Granting judgment in favor of Plaintiffs and against Defendant and awarding Plaintiffs and the Rule 23 State Classes the full amount of damages available by law;

n. Awarding reasonable attorneys' fees and costs incurred by Plaintiffs in filing this action as provided by statute;

o. Awarding the issuance of civil penalties and forfeitures as discussed herein;

p. Awarding liquidated and/or treble damages as available by law;

q. Awarding other pre- and post-judgment interest to Plaintiffs on these damages; and

r. Awarding such other and further relief as this Court deems appropriate.

## <u>JURY DEMAND</u>

Plaintiffs, individually and on behalf of all others similarly situated, by and through their attorneys, hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: June 10, 2025

Respectfully submitted,

By: */s/ Garrett Lee*

**MORGAN & MORGAN, P.A.**
Garrett Lee (BBO# 669603)
155 Federal Street, Suite 1502
Boston, MA 02110
Phone: (857) 383-4906
Fax: (857) 383-4931
glee@forthepeople.com

**ASH LAW, PLLC**
Charles R. Ash, IV (P73877)
(*PHV Forthcoming*)
43000 W. Nine Mile Rd., Suite 301
Novi, MI 48375
Phone: (734) 234-5583
cash@nationalwagelaw.com

**MORGAN & MORGAN, P.A.**
Andrew R. Frisch (FBN 27777)
(*PHV Forthcoming*)
8151 Peters Road, 4th Floor
Plantation, FL 33324
Phone: (954) WORKERS
Fax: (954) 327-3013
AFrisch@forthepeople.com

**RODRIGUEZ LAW PLC**
Oscar A. Rodriguez (P73413)
(*PHV Forthcoming*)
402 W. Liberty St.
Ann Arbor, MI 4813
Phone: (734) 355-5666
oscar@orodlaw.com

*Counsel for Plaintiffs and the Class*
*Members*