# UNITED STATES DISTRICT COURT

# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ALESHIA ATKINSON, ANGELINA WILLIAMS, BRAWNSON REWIS, BRIANA BRITTON, CALISTA TAYLOR, DARRYL WALLER, LINDSEY SIMMONS, and TANIQUE CLARKE, individually, and on behalf of others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> WAYFAIR LLC, a Delaware Limited Liability Corporation, <br><br> Defendant. | Case No. 1:25-cv-11694-FDS |

## WAYFAIR LLC'S ANSWER TO PLAINTIFFS' CLASS ACTION COMPLAINT AND JURY DEMAND

Wayfair LLC ("Wayfair"), through undersigned counsel, responds to the numbered paragraphs in the Class Action Complaint and Jury Demand (the "Complaint") of Plaintiffs Aleshia Atkinson, Angelina Williams, Brawnson Rewis, Briana Britton, Calista Taylor, Darryl Waller, Lindsey Simmons, and Tanique Clarke (the "Named Plaintiffs" or "Plaintiffs") as follows:

## **INTRODUCTION**

1.     This is a class action[1] brought pursuant to Fed. R. Civ. P. 23 and arising from Defendants' willful violations of the Colorado Minimum Wage Act ("CMWA"), C.R.S. §§ 8-4-101, et seq; the Illinois Minimum Wage Laws ("IMWL"), 820 ILCS 105/1, et seq.; the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1, et seq.; the North Carolina Wage and Hour Act, N.C.G.S.A. § 95-25.1, et.seq; Nevada Payment and Collection of Wages and Other

---

[1] A action involving wage and hour violations like those alleged herein is pending in the U.S. District Court for the District of Massachusetts, the Hon. F. Dennis Saylor IV presiding. That action is titled *Counts, et al v. Wayfair LLC* and bears case number 23-cv-11706

Benefits ("NPCW"), N.R.S. §§ 608.140, 608.016, and 608.018, Nev. Const. Art. XV, Sec. 16, Failure to Pay Minimum Wages; New York Labor Law, Article 19 § 650, et seq, Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. § 333.101, et seq, Pennsylvania Wage Payment Collection Law "(PWPCL"), 43 P.S. § 260.1, et seq., Utah Payment of Wages Act ("UPWA"), Utah Code Ann. § 34-28-1, et seq., and the Virgina Wage Payment Act, VA. Code 40.1-29, et seq.

**Answer No. 1:**    The allegations in Paragraph 1 state conclusions of law or legal

arguments to which no response is required. To the extent a response is required, Wayfair denies

the allegations in Paragraph 1.

2.    Defendant offers consumers throughout the country home décor products for purchase via its website or mobile application.

**Answer No. 2:**    Admitted.

3.    Defendant employs remote hourly employees throughout the country to provide the consumers with customer service. These hourly employees, hereinafter collectively referred to as Customer Service Employees (or "CSEs"), have a variety of internal job titles, including Frontline Customer Service Representative, Inbound Sales Representative, and Customer and Resolution Expert (a.k.a. the "CARE" team). However, the material aspects of their employment, duties, and the wage and hour violations complained of herein are the same for all CSEs.

**Answer No. 3:**    Wayfair admits that it employes remote hourly employees

throughout the Untied States to provide its consumers with various types of customer service,

communication, and support. Wayfair denies that all such employees provide the same or similar

services, or that they have the same or similar roles, responsibilities, and/or compensation

structures. Further responding, Wayfair denies that "Frontline Customer Representative" and

"Inbound Sales Representative" are job titles that Wayfair uses. Wayfair also denies that the

"variety of internal job titles" referenced in Paragraph 3's definition of "Customer Service

Employees" ("CSEs") are all job titles that Wayfair considers to be "customer service

employees." Wayfair admits that "Customer and Resolution Expert" is a job title that Wayfair

uses, but denies that those Customer and Resolution Experts are part of any alleged class of

"CSEs." Wayfair further denies that all of the employees potentially encompassed in the

Complaint's definition of "CSEs" interact with customers. Although Wayfair objects to the

Complaint's definition "CSEs," for ease of reference and because Named Plaintiffs purport to

bring this action on behalf of several classes of "CSEs", as the Complaint defines that term,

Wayfair uses the term "CSEs" to answer allegations in the Complaint that use that term. Wayfair

expressly does so without accepting, and in fact denying, that "CSEs" as alleged is a

determinable, cohesive, and similarly situated group of employees. Except as admitted, the

allegations in Paragraph 3 are denied.

**4.**    Defendant requires its CSEs to work a full-time schedule, plus overtime, however,
Defendant does not compensate CSEs for all work performed.

   **Answer No. 4:**    Denied.

**5.**    Defendant requires their CSEs to perform compensable work tasks off-the-clock before
and after their scheduled shifts and during their unpaid meal periods.

   **Answer No. 5:**    Denied.

**6.**    This policy results in CSEs not being paid for all time worked, including overtime.

   **Answer No. 6:**    Denied.

**7.**    While performing their job responsibilities, Defendant's CSEs use multiple computer
networks, software programs, applications, and phone systems.

   **Answer No. 7:**    Wayfair admits that some of the alleged "CSEs" may be required

to use multiple computer networks, software programs, applications, and phone systems to

perform their job duties, but states that such requirements, networks, programs, applications, and

systems vary by paid position and responsibilities. Except as admitted, the allegations in

Paragraph 7 are denied.


**8.**    The time CSEs spend booting up and logging into these programs and applications
before, during, and after their shifts is compensable because the programs and applications are an
integral, indispensable, and important part of the CSEs' work, and they cannot perform their jobs
effectively without them.

**Answer No. 8:**       The allegations contained in Paragraph 8 state conclusions of law or legal arguments to which no response is required. To the extent a response is required, Wayfair admits that the time the alleged "CSEs" spend logging into some programs and applications during their shifts is compensable and that Wayfair pays the alleged "CSEs" for time spent logging into those programs. Except as admitted, the allegations in Paragraph 8 are denied.

9.     Defendant's CSEs all perform essentially the same tasks and are required to use the same or similar computer programs, software programs, applications, and phone systems.

**Answer No. 9:**       Denied.

10.     Defendant's CSEs all follow the same timekeeping process and are subject to the same relevant timekeeping and attendance policies.

**Answer No. 10:**       Wayfair denies that all alleged "CSEs" are subject to the same relevant timekeeping and attendance polices. Further responding, Wayfair is without knowledge or information sufficient to form a belief as to the truth of the allegation that the alleged "CSEs" all follow the same "timekeeping process," and therefore denies that allegation.

11.     Plaintiffs seek to represent in this action all current and former remote CSEs who are similarly situated to each other in terms of their positions, job duties, pay structure, and Defendant's violations of state law.

**Answer No. 11:**       Wayfair is without knowledge or information sufficient to form a belief as to the truth of who Plaintiffs "seek" to represent. Wayfair denies the remaining allegations in Paragraph 11.

12.     Defendant knew or should have known how long it takes CSEs to complete their off-the-clock work, and Defendant could have properly compensated Plaintiffs and the putative Classes for this work, but did not.

**Answer No. 12:**       Denied.

13.     Defendant knew or should have known that CSEs, including Plaintiffs, worked overtime and straight time hours for which they were not compensated.

**Answer No. 13:**       Denied.

14.     Plaintiffs seek a declaration that their rights, and the rights of the putative Classes, were violated, an award of unpaid wages, an award of statutory damages, injunctive and declaratory relief, attendant penalties and an award of attorneys' fees and costs to make them and the Classes whole for damages they suffered, and to ensure that they and future workers will not be subjected by Defendant to such illegal conduct in the future.

    **Answer No. 14:**    The allegations contained in Paragraph 14 state conclusions of law

or legal arguments to which no response is required. To the extent a response is required, Wayfair

denies the allegations in Paragraph 14 and denies that Plaintiffs are entitled to the relief requested

in Paragraph 14.

## JURISDICTION

15.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a), because the amount in controversy exceeds $75,00.00 and there is complete diversity of citizenship among the parties.

    **Answer No. 15:**    The allegations in Paragraph 15 state conclusions of law or legal

arguments to which no response is required. To the extent a response is required, Wayfair admits

that this Court has jurisdiction over this action as alleged in the Complaint.

16.     Moreover, this Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d).

    **Answer No. 16:**    The allegations in Paragraph 16 state conclusions of law or legal

arguments to which no response is required. To the extent a response is required, Wayfair denies

the allegations in Paragraph 16.

17.     This is a class action in which the aggregate claims of the individual Class members exceed the sum value of $5,000,000 exclusive of interest and costs, there are believed to be in excess of 100 Class members, and at least some members of the proposed class have a different citizenship than Defendant.

    **Answer No. 17:**    The allegations in Paragraph 17 state conclusions of law or legal

arguments to which no response is required. To the extent a response is required, Wayfair denies

the allegations in Paragraph 17.

18.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

**Answer No. 18:**    The allegations in Paragraph 18 state conclusions of law or legal arguments to which no response is required. To the extent a response is required, Wayfair admits that this Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202, but denies that Plaintiffs are entitled to a declaratory judgment.

19.    This Court has personal jurisdiction over Defendant because it conducts business within the state of Massachusetts, has its principal place of business and headquarters in Massachusetts, is registered with the Massachusetts Secretary of State and employs individuals within the state of Massachusetts.

**Answer No. 19:**    The allegations in Paragraph 19 state conclusions of law or legal arguments to which no response is required. To the extent a response is required, Wayfair admits the allegations in Paragraph 19.

20.    This Court also has personal jurisdiction over Defendant because it has purposefully availed itself of the privilege of conducting activities in the state of Massachusetts, has established minimum contacts sufficient to confer jurisdiction over it and has its principal place of business in this district and division; and the assumption of jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice and is consistent with the Constitutional requirements of due process.

**Answer No. 20:**    The allegations in Paragraph 20 state conclusions of law or legal arguments to which no response is required. To the extent a response is required, Wayfair admits the allegations in Paragraph 20.

**VENUE**

21.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant conducts substantial business activities within this District and maintains its principal place of business in this District.

**Answer No. 21:**    The allegations in Paragraph 21 state conclusions of law or legal arguments to which no response is required. To the extent a response is required, Wayfair admits the allegations in Paragraph 21 with respect to those claims that are properly within the jurisdiction of this Court.

**PARTIES**

22.    Plaintiff LINDSEY SIMMONS ("Plaintiff Simmons") is a Colorado citizen who worked for Defendant as a remote CSE in Colorado within the last three years. While employed by Defendant, Plaintiff Simmons held the job title of Customer Service Representative.

**Answer No. 22:**    Wayfair is without knowledge or information sufficient to form a

belief as to whether Plaintiff Simmons is a Colorado citizen. Wayfair admits that Plaintiff

Simmons worked for Wayfair as a remote employee in Colorado within the last three years, but

clarifies that Plaintiffs Simmons' job title was "Service Sr. Associate Flex." Except as admitted,

the allegations in Paragraph 22 are denied.

23.    Defendant paid Plaintiff Simmons for her services in the form of an hourly wage, for all credited hours worked, most recently at the rate of approximately $19.90 per hour.

**Answer No. 23:**    Admitted.

24.    Plaintiff BRIANA BRITTON ("Plaintiff Britton") is an Illinois citizen who is currently employed by Defendant as a remote CSE in Illinois. Plaintiff Britton previously held the position of Frontline Agent but is currently a Customer and Resolution Expert.

**Answer No. 24:**    Wayfair is without knowledge or information sufficient to form a

belief as to whether Plaintiff Britton is an Illinois citizen. Wayfair admits that Plaintiff Britton

was, but is not currently, a remote employee of Wayfair in Illinois. Further responding, Wayfair

clarifies that, while an employee of Wayfair, Plaintiff Britton held the titles of "Service Specialist

II CARE" and Service Sr. Associate. Except as admitted, the allegations in Paragraph 24 are

denied.

25.    Defendant pays Plaintiff Britton for her services in the form of an hourly wage, for all credited hours worked. Her current hourly rate is $23.60.

**Answer No. 25:**    Wayfair admits that  Plaintiff Britton's most recent hourly wage

was $23.60, but clarifies that Plaintiff Britton is not a current employee of Wayfair.

26.    Plaintiff ALESHIA ATKINSON ("Plaintiff Atkinson") is a North Carolina citizen who worked for Defendant as a remote CSE in North Carolina within the applicable statute of limitations.

**Answer No. 26:**      Wayfair is without knowledge or information sufficient to form a belief as to whether Plaintiff Atkinson is a North Carolina citizen. Wayfair admits that Plaintiff Atkinson worked for Wayfair as a remote employee in North Carolina within the last three years, but clarifies that Plaintiffs Atkinson's job title was "Service Sr. Associate Canada." Except as admitted, the allegations in Paragraph 26 are denied.

27.    Defendant paid Plaintiff Atkinson for her services in the form of an hourly wage, for all credited hours worked, most recently at the rate of approximately $18.60 per hour, plus non-discretionary bonuses.

**Answer No. 27:**      Admitted, except Wayfair clarifies that Plaintiff Atkinson's most recent hourly rate was approximately$19.30 per hour.

28.    Plaintiff DARRYL WALLER ("Plaintiff Waller") is a Nevada citizen who worked for Defendant as a remote CSE in Nevada within the applicable statute of limitations.

**Answer No. 28:**      Wayfair is without knowledge or information sufficient to form a belief as to whether Plaintiff Waller is a Nevada citizen. Wayfair admits that Plaintiff Atkinson worked for Wayfair as a remote employee in Nevada within the last two years, but clarifies that Plaintiffs Waller's job title was "Sales Specialist – Mattress." Except as admitted, the allegations in Paragraph 28 are denied.

29.    Defendant paid Plaintiff Waller for his services in the form of an hourly wage, for all credited hours worked, most recently at the rate of approximately $12.50 per hour.

**Answer No. 29:**      Admitted, except Wayfair clarifies that Plaintiff Waller's most recent hourly rate was $17.21.

30.    Plaintiff ANGELINA WILLIAMS ("Plaintiff Williams") is a New York citizen who worked for Defendant as a remote CSE in New York within the applicable statute of limitations. While employed by Defendant, Plaintiff Williams held the position of Customer Service Representative.

**Answer No. 30:**      Wayfair is without knowledge or information sufficient to form a belief as to whether Plaintiff Williams is a New York citizen. Wayfair admits that Plaintiff

Williams worked for Wayfair as a remote employee in New York within the last six years, but clarifies that Plaintiff Williams' job title was "Associate SSC." Except as admitted, the allegations in Paragraph 30 are denied.

**31.**    Defendant paid Plaintiff Williams for her services in the form of an hourly wage, for all credited hours worked, most recently at the rate of not less than $16.00 per hour, plus non-discretionary bonuses.

**Answer No. 31:**    Admitted, except Wayfair clarifies that Plaintiff Williams' most recent hourly rate was $16.25 per hour.

**32.**    Plaintiff CALISTA TAYLOR ("Plaintiff Taylor") is a Pennsylvania citizen that is currently employed by Defendant as a remote CSE in Pennsylvania.

**Answer No. 32:**    Wayfair is without knowledge or information sufficient to form a belief as to whether Plaintiff Taylor is a Pennsylvania citizen. Wayfair denies that it has any employee in its records named "Calista Taylor." Wayfair admits that it has a remote employee based in Pennsylvania named "Kallie Taylor." For purposes of this Answer, Wayfair assumes that all allegations referring to "Plaintiff Taylor" are referring to "Kallie Taylor." Further responding, Wayfair admits that Plaintiff Taylor works for Wayfair as a remote employee in Pennsylvania, but clarifies that Plaintiff Taylor is a member of the Social Media Care Team. Except as admitted, the allegations in Paragraph 26 are denied.

**33.**    Plaintiff Taylor currently holds the role of Customer and Resolution Expert.

**Answer No. 33:**    Denied.

**34.**    Defendant pays Plaintiff Taylor for her services in the form of an hourly wage, for all credited hours worked. Her current hourly rate is $24.00.

**Answer No. 34:**    Admitted, except Wayfair clarifies that Plaintiff Taylor's current hourly rate is $24.35 per hour.

**35.**    Plaintiff BRAWNSON REWIS ("Plaintiff Rewis") is a Utah citizen who worked for Defendant as a remote CSE in Utah within the applicable statute of limitations. While employed

by Defendant, Plaintiff Rewis initially held the position of a Customer Service Representative and then was a Customer and Resolution Expert.

**Answer No. 35:**    Wayfair is without knowledge or information sufficient to form a belief as to whether Plaintiff Rewis is a Utah citizen. Wayfair admits that Plaintiff Rewis worked for Wayfair as a remote employee in Utah within the last three years, but clarifies that Plaintiffs Rewis's job title was "Service Specialist II CARE." Except as admitted, the allegations in Paragraph 35 are denied.

36.    Defendant paid Plaintiff Rewis for his services in the form of an hourly wage, for all credited hours worked at a rate at or above $16.00.

**Answer No. 36:**    Admitted, except Wayfair clarifies that Plaintiff Rewis's most recent hourly wage was $24.10 per hour.

37.    Plaintiff TANIQUE CLARKE ("Plaintiff Clarke") is a Virgina citizen who worked for Defendant as a remote CSE in Virgina within the applicable statute of limitations. While employed by Defendant, Plaintiff Clarke held the position of Customer Service Representative.

**Answer No. 37:**    Wayfair is without knowledge or information sufficient to form a belief as to whether Plaintiff Clarke is a Virginia citizen. Wayfair admits that Plaintiff Clarke worked for Wayfair as a remote employee in Virginia within the last three years, but clarifies that Plaintiffs' job title was "Service Associate." Except as admitted, the allegations in Paragraph 37 are denied.

38.    Defendant paid Plaintiff Clarke for her services in the form of an hourly wage, for all credited hours worked, most recently at the rate of approximately $15.50 per hour.

**Answer No. 38:**    Admitted.

39.    Defendant is a Delaware limited liability company, headquartered in Boston, Massachusetts, registered with the Massachusetts Secretary of State (Identification Number 000973546) with its principal place of business located at 4 Copley Place, Boston, Massachusetts 02116.

**Answer No. 39:**    Admitted.

## **GENERAL ALLEGATIONS**

**40.**     Defendant employed Plaintiffs as remote CSEs from Plaintiffs' home offices within the applicable statutes of limitations.

**Answer No. 40:**     Wayfair admits that it employed the Named Plaintiffs as remote employees within the applicable statutes of limitations, but denies that the Named Plaintiffs were all "CSEs" during the applicable statutes of limitations. Responding further, Wayfair is without knowledge or information sufficient to form a belief as to where the Named Plaintiffs performed their remote work. Wayfair denies the remaining allegations in Paragraph 40.

**41.**     Defendant's CSEs are responsible for, among other things: (a) booting up their computers and logging into several essential computer software programs and applications, as well as Defendant's phone system, before fielding phone calls; (b) taking in-bound calls from and making out-bound calls to individuals who need assistance; (c) ensuring that every call and claim is documented and accounted for in Defendant's system; (d) reading emails daily with work instructions; and (e) logging out of the computer software programs and applications and the phones and shutting down their computers.

**Answer No. 41:**     Wayfair denies that all alleged "CSEs" performed all the responsibilities listed in Paragraph 41.

**42.**     Defendant's CSE jobs are hourly, non-exempt positions with rigid schedules that regularly require CSEs, including Plaintiffs, to work at least eight (8) hours per day, on average five (5) days each week, and up to forty (40) hours or more in a workweek.

**Answer No. 42:**     Wayfair admits that the Named Plaintiffs' jobs were hourly, non-exempt positions and that Named Plaintiffs generally worked eight (8) hours per day, on average five (5) days per week, and up to forty (40) hours in a workweek. Wayfair denies the remaining allegations in Paragraph 42.

**43.**     These schedules result in CSEs routinely working overtime on a weekly basis.

**Answer No. 43:**     Denied.

**44.**     Indeed, throughout their employment with Defendant, Plaintiffs were required to work a substantial amount of unpaid time, including overtime, as part of their roles as a CSE.

**Answer No. 44:**     Denied.

**45.**     At all relevant times, Defendant controlled their CSEs' work schedules, duties, protocols, applications, assignments and employment conditions.

**Answer No. 45:**     Wayfair admits that each job at Wayfair involves specific duties, protocols, applications, and assignments, but denies that Wayfair has complete control over remote employees' schedules or employment conditions.

**46.**     Defendant was also responsible for training and continuing their CSEs' education in their role as CSEs.

**Answer No. 46:**     Wayfair admits that it trains its employees. Because "continuing their … education" is vague, Wayfair is without knowledge or information sufficient to form a belief as to the truth of such allegation, and therefore denies the same. Except as admitted, the allegations in Paragraph 46 are denied.

**47.**     Defendant's CSEs all perform essentially the same tasks and are required to use the same or similar computer programs, software programs, applications and phone systems.

**Answer No. 47:**     Denied.

**48.**     These programs, applications and systems are an integral and an important part of the CSEs' work, and they cannot perform their jobs without them.

**Answer No. 48:**     Without information as to the specific "programs, applications and systems" referred to in Paragraph 48, Wayfair is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 48, and therefore denies the same.

**49.**     Defendant's CSEs all follow the same timekeeping process, are subject to the same relevant timekeeping and attendance policies, and are subject to quality assurance reviews based on the same or similar criteria.

**Answer No. 49:**     Denied.

**50.**     Defendant expressly instructs and trains CSEs to have all of their computer networks, software programs and applications open and ready at the start of their scheduled shifts

**Answer No. 50:**     Denied.

**51.**     CSEs, including Plaintiffs, are instructed to only include the time that they are fully prepared to field calls in their hours worked each shift.

**Answer No. 51:**        Denied.

52.      In fact, Defendant's employee handbook (the "Handbook") instructs CSEs (and all other hourly employees) that "[w]e expect the time recorded in the time management system accurately reflects the scheduled/shift provided to you by your immediate supervisor or WFM. Any deviation from the scheduled/shift provided must be approved in advance."

**Answer No. 52:**        Wayfair admits that Paragraph 52 accurately quotes Wayfair's

2022 Employee Guide (but clarifies that the Employee Guide is not attached to the Amended

Complaint).

53.      Defendant furthermore enforces their policy of requiring all computer networks, programs and applications be open and ready at the commencement of a CSE's shift, and critically, before they clock in, through their performance metrics and schedule adherence policies.

**Answer No. 53:**        Denied.

54.      More specifically, being clocked in and/or logged into the phone system (Finesse) but remaining in a status that is unavailable to receive calls for too long can result in poor performance scores and possible disciplinary action, up to and including termination.

**Answer No. 54:**        Wayfair admits that employees can receive poor performance

scores and possible disciplinary action should they intentionally make themselves unavailable to

take or make assigned customer calls for unduly long periods of time or for illegitimate reasons,

such as work avoidance. Except as admitted, the allegations in Paragraph 54 are denied.

55.      Defendant's scoring guidelines measure a CSEs' ability to adhere to mandatory protocols and are comprised of various performance metrics, including but not limited to the CSEs' complete and correct resolution of issues and inquiries from consumers.

**Answer No. 55:**        Wayfair admits that it has scoring guidelines and performance

metrics that measure some employees' adherence to certain protocols, including those

employees' resolution of issues and inquiries from customers. Wayfair denies that all alleged

"CSEs" are customer-facing employees who are evaluated on these scoring guidelines or that all

"CSEs" "resol[ve] … issues and inquiries from customers." Except as admitted, the allegations

in Paragraph 55 are denied.

**56.**     Defendant's performance metrics included how quickly the CSE could resolve the consumer's issue (the "average handle time").

> **Answer No. 56:**     Wayfair admits that one performance metric for employees who interact directly with customers is how quickly the employee resolves customer issues. Wayfair denies that all alleged "CSEs" are customer-facing employees who were evaluated on this metric. Except as admitted, the allegations in Paragraph 56 are denied.

**57.**     CSEs began receiving calls moments after they made themselves available in the phone system. However, not having access to their essential computer programs would lead to prolonged call times, providing inaccurate information, or a poor customer experience.

> **Answer No. 57:**     Wayfair admits that customer-facing "CSEs" who are responsible for inbound customer phone calls begin receiving calls after they identify themselves as available to take calls. Except as admitted, the allegations in Paragraph 57 are denied.

**58.**     Defendant's performance metrics necessarily require that CSEs be logged into all computer programs, applications and systems, and have all reference materials and available resources open at the time of the first call.

> **Answer No. 58:**     Wayfair admits that employees who interact directly with customers are required to be logged into certain computer programs, applications, and systems at the time of the employee's first interaction with a customer. Wayfair denies that all alleged "CSEs" are customer-facing employees, and therefore denies that those employees are required to log into the computer programs, applications, and systems or have available the reference materials and resources described in Paragraph 58. Wayfair specifically denies that it required any employee to have undertaken any of these activities before clocking in. Except as admitted, the allegations in Paragraph 58 are denied.

**59.**     In order to be fully prepared to promptly and efficiently handle calls, CSEs were required to have loaded and logged into all of their computer programs at the moment they clocked in to begin receiving or making calls.

> **Answer No. 59:**     Denied.

**60.**     Further, Defendant insisted that CSEs clock-in as close as possible to the scheduled start time, but not after the start of their scheduled shift.

>     **Answer No. 60:**     Denied.

**61.**     Defendant subjected Plaintiffs and all other CSEs to discipline for clocking in after the start of their scheduled shift, which violated their companywide attendance policy.

>     **Answer No. 61:**     Wayfair admits that employees can receive possible disciplinary action should they clock in unduly late for a scheduled shift without following applicable procedures for starting a shift late. Wayfair otherwise denies the allegations in Paragraph 61.

**62.**     Additionally, while Defendant routinely scheduled CSEs to work forty hours per week, and required them to work their full schedule, Defendant also prohibited CSEs from working overtime hours without advanced approval. Accordingly, recording time spent working outside of their scheduled shift would violate Defendant's prohibition on unapproved overtime.

>     **Answer No. 62:**     Wayfair admits that the Named Plaintiffs were  scheduled to work up to 40 hours per week, but often worked fewer than 40 hours per week. Wayfair denies the remaining allegations in Paragraph 62.

**63.**     In fact, the Handbook states "[e]mployees must always receive authorization from their supervisor before working any overtime, and may be subject to disciplinary action if they engage in unauthorized overtime."

>     **Answer No. 63:**     Wayfair admits that Paragraph 63 quotes Wayfair's 2022 Employee Guide, but denies the implication that "CSEs" are disciplined when they work overtime that is not preauthorized in the ordinary course of performing their assigned duties.

**64.**     Additionally, the Handbook states "performing overtime work not specifically authorized in advance are all serious violations of Wayfair policy."

>     **Answer No. 64:**     Wayfair admits that Paragraph 64 quotes Wayfair's 2022 Employee Guide, but denies the implication that "CSEs" are disciplined when they work overtime that is not preauthorized in the ordinary course of performing their assigned duties.

**65.**    At the end of the CSE's shift, Defendant instructed CSEs to completely shut down their computers, so (if needed) Defendant could roll out system updates and bug fixes overnight.

    **Answer No. 65:**    Denied.

**66.**    Because CSEs are prohibited from including all hours worked in their time recorded, Defendant's compensation policy and system fails to properly account and compensate them for all time worked, including their overtime hours, each day and each workweek.

    **Answer No. 66:**    Denied.

**67.**    Thus, the hours reflected on the CSEs' pay stubs are inaccurate and contrived by Defendant.

    **Answer No. 67:**    Denied.

**68.**    In fact, as outlined below, Defendant maintains a common plan and policy pursuant to which they fail to pay their CSEs for not less than fourteen (14) minutes per day of work performed during pre- and post-shift time and during their lunch periods.

    **Answer No. 68:**    Denied.

**69.**    This time could easily be recorded, accounted for and paid, but Defendant chose not to credit such time as time worked.

    **Answer No. 69:**    Denied.

        **A.**    **Pre-Shift Off-the-Clock Work**

**70.**    In addition to their regularly scheduled shifts, and as mentioned above, Defendant's CSEs perform pre-shift work tasks for which they are uncompensated.

    **Answer No. 70:**    Denied.

**71.**    Pursuant to Defendant's policies, training and direction, Defendant's CSEs are required to start up and log into various secure computer programs, software programs and applications in order to perform their jobs.

    **Answer No. 71:**    Wayfair admits that some of its remote, hourly employees are required to start up and log into various secure computer programs, software programs, and applications to perform their jobs. Further responding, Wayfair denies that all alleged "CSEs" are required to log into various secure computer programs, software programs, and applications to perform their jobs. Wayfair also denies that it requires any of its employees to log into any

computer programs, software programs, or applications required to perform their jobs before

clocking in.

**72.**     The pre-shift startup and login process takes substantial time on a daily basis with said time averaging at least ten (10) to fifteen (15) minutes per day, and the tasks can take longer (upwards of thirty (30) minutes) if CSEs experience technical problems with the computer, software, and/or applications.

      **Answer No. 72:**     Denied.

**73.**     Prior to the commencement of each scheduled shift, Plaintiffs, as well as the other CSEs, were required to perform a number of compensable work tasks including turning on and logging into their computers; connecting to Defendant's virtual private network (VPN); and loading and logging into a number of essential work programs. Once connected to the VPN, CSEs are required to load and log-into a number of essential work programs.

      **Answer No. 73:**     Denied.

**74.**     Defendant's VPN (Cisco AnyConnect) required CSEs to enter a username and password, then request a code, wait for the code, then input the code to access the VPN. From a cold start, this process of establishing a connection to the VPN could easily take ten (10) minutes.

      **Answer No. 74:**     Wayfair admits that its VPN system requires a dual-authentication.

Wayfair denies that this process can take ten minutes and denies that it required employees to log

into the VPN before clocking in.

**75.**     Although there was some variation in computer programs used amongst various CSE positions, it was extremely minimal, and the core and essential programs used were the same for all CSEs. For example, all CSEs used the Cisco AnyConnect (the "VPN"), Finesse (phone system), G-mail (email), Jabber or Slack (chat), Aspect or Verint (identified scheduled breaks for the day), Okta (this housed various applications needed to perform CSE job duties and the timekeeping system)[3], the Wayfair website, and Workday (timekeeping).

      **Answer No. 75:**     Wayfair admits that there is variation in the computer programs

used by "the various CSE positions." Wayfair admits that some, but not all, alleged "CSEs" use

Cisco AnyConnect, Finesse, Gmail, Jabber, Slack, Aspect/Verint, Workday, Okta, the Wayfair

website, and Workday. Except as admitted, the allegations in Paragraph 75 are denied.

**76.**     Additionally, CSEs required access to the Wayfair Support Hub (processing tickets), Service Hub (chats from customers), and Knowledge Hub (operational procedures).

**Answer No. 76:**        Wayfair admits that some, but not all, alleged "CSEs" use Support Hub, Service Hub, and Knowledge Hub. Except as admitted, the allegations in Paragraph 76 are denied.

77.    All CSEs were required to clock-in using a dual authentication process with the programs Okta and Workforce. After loading and logging into all of their computer programs, CSEs requested a code through Okta that was sent to their phone. From there, the CSEs inputted the code into the Workday program to clock themselves in.

**Answer No. 77:**        Wayfair admits that CSEs used a dual authentication process to access the Okta program, and that there are several ways in which CSEs could choose to complete that dual authentication (for example, requesting a code be sent to their phone, that they then put into the Okta program). Wayfair denies that CSEs would do so after "loading and logging into all of their computer programs." Except as admitted, the allegations in Paragraph 77 are denied.

78.    Notably, CSRs could not even access Okta or Workday without first establishing a connection to the VPN.

**Answer No. 78:**        Denied.

79.    The aforementioned tasks are an integral and essential aspect of a CSE's job duties and responsibilities, as CSEs must have all of the above referenced computer programs, systems, and applications up and running on their computers in order to be prepared to accept calls.

**Answer No. 79:**        Wayfair admits that some of its customer-facing employees must have some of the referenced computer programs, systems, and applications up and running on their computers to be prepared to accept or make calls, and that running those programs, systems, and applications are integral to their job duties. Except as admitted, the allegations in Paragraph 79 are denied.

80.    Yet, Defendant fails to compensate CSEs for the computer boot up tasks.

**Answer No. 80:**        Denied.

**81.**    Instead, Defendant maintains attendance policies that require them to be call-ready at the moment they clock-in and prohibit them from recording hours outside of their regularly scheduled shifts.

**Answer No. 81:**    Denied.

**82.**    Furthermore, Defendant regularly rolled out system updates and bug fixes, which extended the process of getting clocked in for their scheduled shifts. As a result, CSEs were regularly required to begin the computer bootup process well in advance of their shift in the event that Defendant had implemented system updates, bug fixes, or patches the night before. Failure to do so required the CSE to risk being late for work due to said system updates.

**Answer No. 82:**    Denied.

**83.**    As a result, Defendant maintains a common plan and policy pursuant to which they fail to pay CSEs for no less than ten (10) minutes per day of work performed in connection with the above pre-shift activities.

**Answer No. 83:**    Denied.

### B.    Meal-Period Off-the-Clock Work

**84.**    Defendant provides their CSEs with one (1) thirty (30) minute unpaid lunch break per shift.

**Answer No. 84:**    Admitted.

**85.**    In reality, Defendant routinely requires CSEs to perform work during their unpaid lunch breaks.

**Answer No. 85:**    Denied.

**86.**    Defendant does not provide CSEs with a bona fide meal period because its policies and procedures require CSEs to return from their lunch early to perform at least part of the boot up process above.

**Answer No. 86:**    Denied.

**87.**    On most days, CSEs spend approximately three (3) to four (4) minutes performing this work during their unpaid meal breaks on most days, however, such time is even greater, when CSEs are required to do a complete reboot.

**Answer No. 87:**    Denied.

**88.**    Defendant's management is aware that this was Plaintiffs' and other CSEs' practice to perform these tasks off the clock, and could have paid CSEs for this time, but did not.

**Answer No. 88:**    Denied.

C.    **Post-Shift Off-the-Clock Work**

**89.**    Pursuant to Defendant's policies, training and direction, Defendant's CSEs are required at the end of each shift to log out of the essential computer software programs and applications utilized during their shifts. Additionally, as stated above, they are asked to completely shut down their computers to allow for overnight updates to be installed properly.

**Answer No. 89:**    Wayfair admits that its employees are required to log out of certain

computer programs at the end of their shifts. Wayfair denies that it requires any of its employees

to log out of those programs after clocking out. Except as admitted, the allegations in Paragraph

89 are denied.

**90.**    The shutdown and logout process, along with post-shift claims processing, requires another one (1) to two (2) minutes of off the clock work per shift.

**Answer No. 90:**    Denied.

**91.**    Pursuant to Defendant's policies, training and direction, Plaintiffs and the other CSEs are not allowed begin the shutdown and logout process until their scheduled shift ends and they complete their last call.

**Answer No. 91:**    Wayfair admits that its employees are not allowed to close certain

computer programs required to do their jobs until they complete their last call at the end of their

shift. Wayfair denies that it requires any of its employees to log out of those programs after

clocking out. Except as admitted, the allegations in Paragraph 91 are denied.

**92.**    Defendant did not compensate CSEs for all the time spent shutting down and logging out of their essential work systems.

**Answer No. 92:**    Denied.

**93.**    The unpaid off-the-clock work performed after each shift by Plaintiffs and all other CSEs directly benefits Defendant, and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as CSEs.

**Answer No. 93:**    Denied.

D.    **Defendant Benefitted From the Uncompensated Off-the-Clock Work**

**94.**    At all relevant times, Defendant directed and directly benefitted from the work performed by Plaintiffs and similarly situated employees in connection with the above-described pre-shift, meal-period and post-shift activities performed by CSEs.

    **<u>Answer No. 94:</u>**    Denied.

**95.**    At all relevant times, Defendant controlled the work schedules, duties, protocols, applications, assignments and employment conditions of their CSEs.

    **<u>Answer No. 95:</u>**    Wayfair admits that each job at Wayfair involves specific duties,

protocols, applications, and assignments, but denies that Wayfair has complete control over

remote employees' schedule or employment conditions.

**96.**    At all relevant times, Defendant was able to track the amount of time CSEs spent in connection with the pre-shift, meal-period and post-shift activities.

    **<u>Answer No. 96:</u>**    Denied.

**97.**    Defendant failed to do so and failed to compensate CSEs for the off-the-clock work they performed.

    **<u>Answer No. 97:</u>**    Denied.

**98.**    At all relevant times, Defendant used their attendance, adherence and timekeeping policies against the CSEs in order to pressure them into performing the pre-shift, meal-period and post-shift off-the-clock work.

    **<u>Answer No. 98:</u>**    Denied.

**99.**    Defendant expressly trained and instructed CSEs to perform the above-described pre-shift activities before the start of their scheduled shifts, to ensure they were prepared to take or make calls (i.e., were "phone ready") the moment they clocked in for their shifts.

    **<u>Answer No. 99:</u>**    Denied.

**100.**    At all relevant times, Defendant's policies and practices deprived CSEs of wages owed for the pre-shift, meal-period and post-shift activities they performed.

    **<u>Answer No. 100:</u>**    Denied.

**101.**    Because Defendant's CSEs typically worked forty (40) hours or more in a workweek, Defendant's policies and practices also deprived them of overtime pay in many workweeks.

    **<u>Answer No. 101:</u>**    Denied.

**102.** Defendant knew or should have known that the time spent by CSEs in connection with the pre-shift, meal-period and post-shift activities was compensable under the law.

**Answer No. 102:** Denied.

**103.** Despite knowing CSEs performed work before and after their scheduled shifts and during their unpaid meal periods, Defendant failed to make any effort to stop or disallow the off- the-clock work and instead suffered and permitted it to happen.

**Answer No. 103:** Denied.

**104.** Unpaid wages related to the off-the-clock work described herein are owed to CSEs at the overtime premium of one and one-half times their regular hourly rate because CSEs regularly worked in excess of forty (40) hours in a workweek.

**Answer No. 104:** Denied.

## RULE 23 COLORADO CLASS ACTION ALLEGATIONS

**105.** Plaintiff Simmons brings this action pursuant to Fed. R. Civ. P. 23(b)(3) on her own behalf and on behalf of:

*All current and former CSEs who worked for Defendant in Colorado at any time during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 Colorado Class"). Plaintiff Simmons reserves the right to amend the putative class definition if necessary.

**Answer No. 105:** Wayfair admits that Plaintiff Simmons purports to bring this action

pursuant to Fed. R. Civ. P. 23 on behalf of the "Rule 23 Colorado Class" defined in Paragraph

105. Wayfair denies that Plaintiff Simmons may bring any claims on a class-wide basis and

denies that the Rule 23 Colorado Class should be certified.

**106.** The members of the Rule 23 Colorado Class are so numerous that joinder of all Rule 23 Colorado Class members in this case would be impractical.

**Answer No. 106:** Denied.

**107.** Plaintiff Simmons reasonably estimates that there are hundreds of Rule 23 Colorado members. Rule 23 Colorado Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

**Answer No. 107:**        Wayfair is without knowledge or information sufficient to form a

belief as to Plaintiff Simmons' estimate of the proposed Rule 23 Colorado Class, and therefore

denies the allegations in Paragraph 107.

**108.**    There is a well-defined community of interest among Rule 23 Colorado Class members
and common questions of law and fact predominate in this action over any questions affecting
individual members of the Rule 23 Colorado Class.

**Answer No. 108:**        Denied.

**109.**    These common legal and factual questions include, but are not limited to, the following:

      a.    Whether the pre-and post-shift time Rule 23 Colorado Class
members spend on start-up/log-in activities, attending meetings,
and shut-down activities off the clock each shift is compensable
time;

      b.    Whether Defendant failed to pay all "wages" owed to the Rule 23
Colorado Class, as contemplated by CMWA;

      c.    Whether Defendant unlawfully withheld or diverted wages from the
Rule 23 Colorado Class in violation of the CMWA;

      d.    Whether Defendant properly furnished each Rule 23 Colorado Class
Member with an itemized statement showing the gross pay and
deductions;

      e.    Whether Defendant failed to timely pay all wages owed to the Rule
23 Colorado Class, as required by CMWA; and

      f.    Whether the Rule 23 Colorado Class members are owed wages for
time spent performing pre-, mid-, and post-shift activities discussed
herein, as well as time reported by the Rule 23 Colorado Class but
otherwise not paid, and if so, the appropriate amount thereof.

**Answer No. 109:**        Denied.

**110.**    Plaintiff Simmons' claims are typical of those of the Rule 23 Colorado Class in that she
and all other Rule 23 Colorado Class members suffered damages as a direct and proximate result
of the Defendant's common and systemic payroll policies and practices.

**Answer No. 110:**        Denied.

**111.**    Plaintiff Simmons' claims arise from the same policies, practices, promises and course of conduct as all other Rule 23 Colorado Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Colorado Class members.

      **Answer No. 111:**    Denied.

**112.**    Plaintiff Simmons will fully and adequately protect the interests of the Rule 23 Colorado Class and she has retained counsel who are qualified and experienced in the prosecution of Colorado wage and hour class actions.

      **Answer No. 112:**    Wayfair denies that Plaintiff Simmons will fully and adequately

protect the interests of the Rule 23 Colorado Class. Wayfair is without knowledge or information

sufficient to form a belief as to the remaining allegations in Paragraph 112, and therefore denies

them.

**113.**    Neither Plaintiff Simmons nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Colorado Class.

      **Answer No. 113:**    Denied.

**114.**    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, inter alia, it is economically infeasible for Rule 23 Colorado Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

      **Answer No. 114:**    Denied.

**115.**    Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

      **Answer No. 115:**    Denied.

**116.**    This case will be manageable as a Rule 23 Class action. Plaintiff Simmons and her counsel know of no unusual difficulties in this case and Defendant has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

      **Answer No. 116:**    Wayfair admits that it maintains organized employee records, but

denies that that fact supports Plaintiff Simmons' allegation that Wayfair's system justify

certification of the Rule 23 Colorado Class. Wayfair otherwise denies the allegations in

Paragraph 116.

117.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co., 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

**Answer No. 117:**    Denied.

118.    Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Colorado Class and declaratory relief is appropriate in this case with respect to the Rule 23 Colorado Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**Answer No. 118:**    Denied.

119.    Because Defendant continues to refuse to pay its workers for each and every hour worked, by failing to maintain and account for accurate recordkeeping, the Colorado Class seeks an order from this Court enjoining Defendant from its continued violation of Colorado law and for an award of civil penalties.

**Answer No. 119:**    Denied.

120.    Defendant has acted and refused to act on grounds that apply generally to the Class, and because declaratory relief is appropriate in the case with respect to the Colorado Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**Answer No. 120:**    Denied.

### RULE 23 ILLINOIS CLASS ACTION ALLEGATIONS

121.    Plaintiff Britton brings this action pursuant to Fed. R. Civ. P. 23(b)(3) on her own behalf and on behalf of:

***All current and former CSEs who worked for Defendant in Illinois at any time during the applicable statutory period.***

(hereinafter referred to as the "Rule 23 Illinois Class"). Plaintiff Britton reserves the right to amend the putative class definition if necessary.

**Answer No. 121:**    Wayfair admits that Plaintiff Britton purports to bring this action

pursuant to Fed. R. Civ. P. 23 on behalf of the "Rule 23 Illinois Class" defined in Paragraph 121.

Wayfair denies that Plaintiff Britton may bring any claims on a class-wide basis and denies that

the Rule 23 Illinois Class should be certified.

122.    The members of the Rule 23 Illinois Class are so numerous that joinder of all Rule 23 Illinois Class members in this case would be impractical.

**Answer No. 122:**     Denied.

123.     Plaintiff Britton reasonably estimates that there are hundreds of Rule 23 Illinois members. Rule 23 Illinois Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

**Answer No. 123:**     Wayfair is without knowledge or information sufficient to form a

belief as to Plaintiff Britton's estimate of the proposed Rule 23 Illinois Class, and therefore

denies the allegations in Paragraph 123.

124.     There is a well-defined community of interest among Rule 23 Illinois Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Illinois Class.

**Answer No. 124:**     Denied.

125.     These common legal and factual questions include, but are not limited to, the following:

> a.     Whether the pre-and post-shift time Rule 23 Illinois Class members spend on start-up/log-in activities, attending meetings, and shut-down activities off the clock each shift is compensable time;
>
> b.     Whether Defendant failed to pay all "wages" owed to the Rule 23 Illinois Class, as contemplated by the IMWL and IWPCA;
>
> c.     Whether Defendant unlawfully withheld or diverted wages from the Rule 23 Illinois Class in violation of the IMWL and IWPCA;
>
> d.     Whether Defendant properly furnished each Rule 23 Illinois Class Member with an itemized statement showing the gross pay and deductions;
>
> e.     Whether Defendant failed to timely pay all wages owed to the Rule 23 Illinois Class, as required by IMWL and IWPCA; and
>
> f.     Whether the Rule 23 Illinois Class members are owed wages for time spent performing pre-, mid-, and post-shift activities discussed herein, as well as time reported by the Rule 23 Illinois Class but otherwise not paid, and if so, the appropriate amount thereof.

**Answer No. 125:**     Denied.

**126.**    Plaintiff Britton's claims are typical of those of the Rule 23 Illinois Class in that she and all other Rule 23 Illinois Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices.

**Answer No. 126:**        Denied.

**127.**    Plaintiff Britton's claims arise from the same policies, practices, promises and course of conduct as all other Rule 23 Illinois Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Illinois Class members.

**Answer No. 127:**        Denied.

**128.**    Plaintiff Britton will fully and adequately protect the interests of the Rule 23 Illinois Class and she has retained counsel who are qualified and experienced in the prosecution of Illinois wage and hour class actions.

**Answer No. 128:**        Wayfair denies that Plaintiff Britton will fully and adequately

protect the interests of the Rule 23 Illinois Class. Wayfair is without knowledge or information

sufficient to form a belief as to the remaining allegations in Paragraph 128, and therefore denies

them.

**129.**    Neither Plaintiff Britton nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Illinois Class.

**Answer No. 129:**        Denied.

**130.**    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Illinois Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

**Answer No. 130:**        Denied.

**131.**    Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

**Answer No. 131:**        Denied.

**132.**    This case will be manageable as a Rule 23 Class action. Plaintiff Britton and her counsel know of no unusual difficulties in this case and Defendant has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

**Answer No. 132:**       Wayfair admits that it maintains organized employee records, but

denies that that fact supports Plaintiff Britton's allegation that Wayfair's system justify

certification of the Rule 23 Illinois Class. Wayfair otherwise denies the allegations in Paragraph

132.

133.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is
appropriate. Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co., 559 U.S. 393; 130 S. Ct.
1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose
suit meets the specified criteria to pursue his claim as a class action").

**Answer No. 133:**       Denied.

134.    Because Defendant acted and refused to act on grounds that apply generally to the Rule
23 Illinois Class and declaratory relief is appropriate in this case with respect to the Rule 23
Illinois Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**Answer No. 134:**       Denied.

135.    Because Defendant continues to refuse to pay its workers for each and every hour
worked, by failing to maintain and account for accurate recordkeeping, the Illinois Class seeks an
order from this Court enjoining Defendant from its continued violation of the IMWL and
IWPCA and for an award of civil penalties.

**Answer No. 135:**       Denied.

136.    Defendant has acted and refused to act on grounds that apply generally to the Class, and
because declaratory relief is appropriate in the case with respect to the Illinois Class as a whole,
class certification pursuant to Rule 23(b)(2) is also appropriate.

**Answer No. 136:**       Denied.

## RULE 23 NORTH CAROLINA CLASS ACTION ALLEGATIONS

137.    Plaintiff Atkinson brings this action pursuant to Fed. R. Civ. P. 23(b)(3) on her own
behalf and on behalf of:

> ***All current and former CSEs who worked for Defendant in North Carolina at any time
> during the applicable statutory period.***

(hereinafter referred to as the "Rule 23 North Carolina Class"). Plaintiff Atkinson
reserves the right to amend the putative class definition if necessary.

**Answer No. 137:**       Wayfair admits that Plaintiff Simmons purports to bring this action

pursuant to Fed. R. Civ. P. 23 on behalf of the "Rule 23 North Carolina Class" defined in

Paragraph 137. Wayfair denies that Plaintiff Atkinson may bring any claims on a class-wide basis

and denies that the Rule 23 North Carolina Class should be certified.

**138.**    The members of the Rule 23 North Carolina Class are so numerous that joinder of all Rule 23 North Carolina Class members in this case would be impractical.

**Answer No. 138:**    Denied.

**139.**    Plaintiff Atkinson reasonably estimates that there are hundreds of Rule 23 North Carolina members. Rule 23 North Carolina Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

**Answer No. 139:**    Wayfair is without knowledge or information sufficient to form a

belief as to Plaintiff Atkinsons's estimate of the proposed Rule 23 North Carolina Class, and

therefore denies the allegations in Paragraph 139.

**140.**    There is a well-defined community of interest among Rule 23 North Carolina Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 North Carolina Class.

**Answer No. 140:**    Denied.

**141.**    These common legal and factual questions include, but are not limited to, the following:

  a. Whether the pre-and post-shift time Rule 23 North Carolina Class members spend on start-up/log-in activities, attending meetings, and shut-down activities off the clock each shift is compensable time;

  b. Whether Defendant failed to pay all "wages" owed to the Rule 23 North Carolina Class, as contemplated by NCWHA;

  c. Whether Defendant unlawfully withheld or diverted wages from the Rule 23 North Carolina Class in violation of the NCWHA;

  d. Whether Defendant properly furnished each Rule 23 North Carolina Class Member with an itemized statement showing the gross pay and deductions;

  e. Whether Defendant failed to timely pay all wages owed to the Rule 23 North Carolina Class, as required by NCWHA; and

  f. Whether the Rule 23 North Carolina Class members are owed wages for time spent performing pre-, mid-, and post-shift activities discussed herein, as well as time reported by the Rule 23 North

Carolina Class but otherwise not paid, and if so, the appropriate amount thereof.

**Answer No. 141:**    Denied.

142.    Plaintiff Atkinson's claims are typical of those of the Rule 23 North Carolina Class in that she and all other Rule 23 North Carolina Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices.

**Answer No. 142:**    Denied.

143.    Plaintiff Atkinson's claims arise from the same policies, practices, promises and course of conduct as all other Rule 23 North Carolina Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 North Carolina Class members.

**Answer No. 143:**    Denied.

144.    Plaintiff Atkinson will fully and adequately protect the interests of the Rule 23 North Carolina Class and she has retained counsel who are qualified and experienced in the prosecution of North Carolina wage and hour class actions.

**Answer No. 144:**    Wayfair denies that Plaintiff Atkinson will fully and adequately protect the interests of the Rule 23 North Carolina Class. Wayfair is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 144, and therefore denies them.

145.    Neither Plaintiff Atkinson nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 North Carolina Class.

**Answer No. 145:**    Denied.

146.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, inter alia, it is economically infeasible for Rule 23 North Carolina Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

**Answer No. 146:**    Denied.

147.    Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

**Answer No. 147:**    Denied.

**148.**    This case will be manageable as a Rule 23 Class action. Plaintiff Atkinson and her counsel know of no unusual difficulties in this case and Defendant has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

**Answer No. 148:**    Wayfair admits that it maintains organized employee records, but

denies that that fact supports Plaintiff Atkinson's allegation that Wayfair's system justify

certification of the Rule 23 North Carolina Class. Wayfair otherwise denies the allegations in

Paragraph 148.

**149.**    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co., 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

**Answer No. 149:**    Denied.

**150.**    Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 North Carolina Class and declaratory relief is appropriate in this case with respect to the Rule 23 North Carolina Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**Answer No. 150:**    Denied.

**151.**    Because Defendant continues to refuse to pay its workers for each and every hour worked, by failing to maintain and account for accurate recordkeeping, the North Carolina Class seeks an order from this Court enjoining Defendant from its continued violation of North Carolina law and for an award of civil penalties.

**Answer No. 151:**    Denied.

**152.**    Defendant has acted and refused to act on grounds that apply generally to the Class, and because declaratory relief is appropriate in the case with respect to the North Carolina Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**Answer No. 152:**    Denied.

## RULE 23 NEVADA CLASS ACTION ALLEGATIONS

**153.**    Plaintiff Waller brings this action pursuant to Fed. R. Civ. P. 23(b)(3) on his own behalf and on behalf of:

> *All current and former CSEs who worked for Defendant in Nevada at any time during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 Nevada Class"). Plaintiff Waller reserves the right to amend the putative class definition if necessary.

**Answer No. 153:** Wayfair admits that Plaintiff Waller purports to bring this action

pursuant to Fed. R. Civ. P. 23 on behalf of the "Rule 23 Nevada Class" defined in Paragraph 153.

Wayfair denies that Plaintiff Waller may bring any claims on a class-wide basis and denies that

the Rule 23 Nevada Class should be certified.

**154.** The members of the Rule 23 Nevada Class are so numerous that joinder of all Rule 23 Nevada Class members in this case would be impractical.

**Answer No. 154:** Denied.

**155.** Plaintiff Waller reasonably estimates that there are hundreds of Rule 23 Nevada members. Rule 23 Nevada Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

**Answer No. 155:** Wayfair is without knowledge or information sufficient to form a

belief as to Plaintiff Waller's estimate of the proposed Rule 23 Nevada Class, and therefore

denies the allegations in Paragraph 155.

**156.** There is a well-defined community of interest among Rule 23 Nevada Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nevada Class.

**Answer No. 156:** Denied.

**157.** These common legal and factual questions include, but are not limited to, the following:

    a. Whether the pre-and post-shift time Rule 23 Nevada Class members spend on start-up/log-in activities, attending meetings, and shut-down activities off the clock each shift is compensable time;

    b. Whether Defendant failed to pay all "wages" owed to the Rule 23 Nevada Class, as contemplated by Nevada law;

    c. Whether Defendant unlawfully withheld or diverted wages from the Rule 23 Nevada Class in violation of Nevada law;

    d. Whether Defendant properly furnished each Rule 23 Nevada Class Member with an itemized statement showing the gross pay and deductions;

     e.   Whether Defendant failed to timely pay all wages owed to the Rule 23 Nevada Class, as required by Nevada law; and

     f.   Whether the Rule 23 Nevada Class members are owed wages for time spent performing pre-, mid-, and post-shift activities discussed herein, as well as time reported by the Rule 23 Nevada Class but otherwise not paid, and if so, the appropriate amount thereof.

    **Answer No. 157:**    Denied.

**158.**   Plaintiff Waller's claims are typical of those of the Rule 23 Nevada Class in that he and all other Rule 23 Nevada Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices.

    **Answer No. 158:**    Denied.

**159.**   Plaintiff Waller's claims arise from the same policies, practices, promises and course of conduct as all other Rule 23 Nevada Class members' claims and his legal theories are based on the same legal theories as all other Rule 23 Nevada Class members.

    **Answer No. 159:**    Denied.

**160.**   Plaintiff Waller will fully and adequately protect the interests of the Rule 23 Nevada Class and he has retained counsel who are qualified and experienced in the prosecution of Nevada wage and hour class actions.

    **Answer No. 160:**    Wayfair denies that Plaintiff Waller will fully and adequately

protect the interests of the Rule 23 Nevada Class. Wayfair is without knowledge or information

sufficient to form a belief as to the remaining allegations in Paragraph 160, and therefore denies

them.

**161.**   Neither Plaintiff Waller nor his counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nevada Class.

    **Answer No. 161:**    Denied.

**162.**   A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, inter alia, it is economically infeasible for Rule 23 Nevada Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

    **Answer No. 162:**    Denied.

**163.**    Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

    **Answer No. 163:**    Denied.

**164.**    This case will be manageable as a Rule 23 Class action. Plaintiff Waller and his counsel know of no unusual difficulties in this case and Defendant has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

    **Answer No. 164:**    Wayfair admits that it maintains organized employee records, but

denies that that fact supports Plaintiff Waller's allegation that Wayfair's system justify

certification of the Rule 23 Nevada Class. Wayfair otherwise denies the allegations in Paragraph

164.

**165.**    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

    **Answer No. 165:**    Denied.

**166.**    Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Nevada Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nevada Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

    **Answer No. 166:**    Denied.

**167.**    Because Defendant continues to refuse to pay its workers for each and every hour worked, by failing to maintain and account for accurate recordkeeping, the Nevada Class seeks an order from this Court enjoining Defendant from its continued violation of Nevada law and for an award of civil penalties.

    **Answer No. 167:**    Denied.

**168.**    Defendant has acted and refused to act on grounds that apply generally to the Class, and because declaratory relief is appropriate in the case with respect to the Nevada Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

    **Answer No. 168:**    Denied.

## **RULE 23 NEW YORK CLASS ACTION ALLEGATIONS**

**169.**    Plaintiff Williams brings this action pursuant to Fed. R. Civ. P. 23(b)(3) on her own behalf and on behalf of:

> ***All current and former CSEs who worked for Defendant in New York at any time during the applicable statutory period.***

(hereinafter referred to as the "Rule 23 New York Class"). Plaintiff Williams reserves the right to amend the putative class definition if necessary.

> **Answer No. 169:**    Wayfair admits that Plaintiff Williams purports to bring this action

pursuant to Fed. R. Civ. P. 23 on behalf of the "Rule 23 New York Class" defined in Paragraph

169. Wayfair denies that Plaintiff Williams may bring any claims on a class-wide basis and

denies that the Rule 23 New York Class should be certified.

**170.**    The members of the Rule 23 New York Class are so numerous that joinder of all Rule 23 New York Class members in this case would be impractical.

> **Answer No. 170:**    Denied.

**171.**    Plaintiff Williams reasonably estimates that there are hundreds of Rule 23 New York members. Rule 23 New York Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

> **Answer No. 171:**    Wayfair is without knowledge or information sufficient to form a

belief as to Plaintiff Williams' estimate of the proposed Rule 23 New York Class, and therefore

denies the allegations in Paragraph 171.

**172.**    There is a well-defined community of interest among Rule 23 New York Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 New York Class.

> **Answer No. 172:**    Denied.

**173.**    These common legal and factual questions include, but are not limited to, the following:

> a.    Whether the pre-and post-shift time Rule 23 New York Class members spend on start-up/log-in activities, attending meetings, and shut-down activities off the clock each shift is compensable time;
>
> b.    Whether Defendant failed to pay all "wages" owed to the Rule 23 New York Class, as contemplated by New York law;

    c.      Whether Defendant unlawfully withheld or diverted wages from the Rule 23 New York Class in violation of New York law;

    d.      Whether Defendant failed to properly notify each member of the Rule 23 New York Class in writing at the time of hiring the normal hours and wages agreed upon, the time and place of payment, and the deductions made from their wages;

    e.      Whether Defendant properly furnished each Rule 23 New York Class Member with an itemized statement showing the gross pay and deductions;

    f.      Whether Defendant failed to timely pay all wages owed to the Rule 23 New York Class, as required by New York law; and

    g.      Whether the Rule 23 New York Class members are owed wages for time spent performing pre-, mid-, and post-shift activities discussed herein, as well as time reported by the Rule 23 New York Class but otherwise not paid, and if so, the appropriate amount thereof.

    **Answer No. 173:**    Denied.

**174.**    Plaintiff Williams' claims are typical of those of the Rule 23 New York Class in that she and all other Rule 23 New York Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices.

    **Answer No. 174:**    Denied.

**175.**    Plaintiff Williams' claims arise from the same policies, practices, promises and course of conduct as all other Rule 23 New York Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 New York Class members.

    **Answer No. 175:**    Denied.

**176.**    Plaintiff Williams will fully and adequately protect the interests of the Rule 23 New York Class and she has retained counsel who are qualified and experienced in the prosecution of New York wage and hour class actions.

    **Answer No. 176:**    Wayfair denies that Plaintiff Williams will fully and adequately

protect the interests of the Rule 23 New York Class. Wayfair is without knowledge or

information sufficient to form a belief as to the remaining allegations in Paragraph 176, and

therefore denies them.

**177.**    Neither Plaintiff Williams nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 New York Class.

    **Answer No. 177:**    Denied.

**178.**     A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, inter alia, it is economically infeasible for Rule 23 New York Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

    **Answer No. 178:**     Denied.

**179.**     Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

    **Answer No. 179:**     Denied.

**180.**     This case will be manageable as a Rule 23 Class action. Plaintiff Williams and her counsel know of no unusual difficulties in this case and Defendant has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

    **Answer No. 180:**     Wayfair admits that it maintains organized employee records, but

denies that that fact supports Plaintiff Willaims' allegation that Wayfair's system justify

certification of the Rule 23 New York Class. Wayfair otherwise denies the allegations in

Paragraph 180.

**181.**     Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co., 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

    **Answer No. 181:**     Denied.

**182.**     Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 New York Class and declaratory relief is appropriate in this case with respect to the Rule 23 New York Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

    **Answer No. 182:**     Denied.

**183.**     Because Defendant continues to refuse to pay its workers for each and every hour worked, by failing to maintain and account for accurate recordkeeping, the New York Class seeks an order from this Court enjoining Defendant from its continued violation of New York law and for an award of civil penalties.

    **Answer No. 183:**     Denied.

**184.**    Defendant has acted and refused to act on grounds that apply generally to the Class, and because declaratory relief is appropriate in the case with respect to the New York Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

> **Answer No. 184:**    Denied.

## RULE 23 PENNSYLVANIA CLASS ACTION ALLEGATIONS

**185.**    Plaintiff Taylor brings this action pursuant to Fed. R. Civ. P. 23(b)(3) on her own behalf and on behalf of:

> ***All current and former CSEs who worked for Defendant in Pennsylvania at any time during the applicable statutory period.***

(hereinafter referred to as the "Rule 23 Pennsylvania Class"). Plaintiff Taylor reserves the right to amend the putative class definition if necessary.

> **Answer No. 185:**    Wayfair admits that Plaintiff Taylor purports to bring this action

pursuant to Fed. R. Civ. P. 23 on behalf of the "Rule 23 Pennsylvania Class" defined in

Paragraph 185. Wayfair denies that Plaintiff Taylor may bring any claims on a class-wide basis

and denies that the Rule 23 Pennsylvania Class should be certified.

**186.**    The members of the Rule 23 Pennsylvania Class are so numerous that joinder of all Rule 23 Pennsylvania Class members in this case would be impractical.

> **Answer No. 186:**    Denied.

**187.**    Plaintiff Taylor reasonably estimates that there are hundreds of Rule 23 Pennsylvania members. Rule 23 Pennsylvania Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

> **Answer No. 187:**    Wayfair is without knowledge or information sufficient to form a

belief as to Plaintiff Taylor's estimate of the proposed Rule 23 Pennsylvania Class, and therefore

denies the allegations in Paragraph 187.

**188.**    There is a well-defined community of interest among Rule 23 Pennsylvania Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Pennsylvania Class.

> **Answer No. 188:**    Denied.

**189.**    These common legal and factual questions include, but are not limited to, the following:

a.     Whether the pre-and post-shift time Rule 23 Pennsylvania Class members spend on start-up/log-in activities, attending meetings, and shut-down activities off the clock each shift is compensable time;

b.     Whether Defendant failed to pay all "wages" owed to the Rule 23 Pennsylvania Class, as contemplated by the PMWA and the PWPCL;

c.     Whether Defendant unlawfully withheld or diverted wages from the Rule 23 Pennsylvania Class in violation of the PMWA and the PWPCL;

d.     Whether Defendant properly furnished each Rule 23 Pennsylvania Class Member with an itemized statement showing the gross pay and deductions;

e.     Whether Defendant failed to timely pay all wages owed to the Rule 23 Pennsylvania Class, as required by PMWA and the PWPCL; and

f.     Whether the Rule 23 Pennsylvania Class members are owed wages for time spent performing pre-, mid-, and post-shift activities discussed herein, as well as time reported by the Rule 23 Pennsylvania Class but otherwise not paid, and if so, the appropriate amount thereof.

**Answer No. 189:**     Denied.

**190.**     Plaintiff Taylor's claims are typical of those of the Rule 23 Pennsylvania Class in that she and all other Rule 23 Pennsylvania Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices.

**Answer No. 190:**     Denied.

**191.**     Plaintiff Taylor's claims arise from the same policies, practices, promises and course of conduct as all other Rule 23 Pennsylvania Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Pennsylvania Class members.

**Answer No. 191:**     Denied.

**192.**     Plaintiff Taylor will fully and adequately protect the interests of the Rule 23 Pennsylvania Class and she has retained counsel who are qualified and experienced in the prosecution of Pennsylvania wage and hour class actions.

**Answer No. 192:**     Wayfair denies that Plaintiff Taylor will fully and adequately

protect the interests of the Rule 23 Pennsylvania Class. Wayfair is without knowledge or

information sufficient to form a belief as to the remaining allegations in Paragraph 192, and

therefore denies them.

**193.**     Neither Plaintiff Taylor nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Pennsylvania Class.

**Answer No. 193:**    Denied.

194.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, inter alia, it is economically infeasible for Rule 23 Pennsylvania Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

**Answer No. 194:**    Denied.

195.    Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

**Answer No. 195:**    Denied.

196.    This case will be manageable as a Rule 23 Class action. Plaintiff Taylor and her counsel know of no unusual difficulties in this case and Defendant has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

**Answer No. 196:**    Wayfair admits that it maintains organized employee records, but

denies that that fact supports Plaintiff Taylor's allegation that Wayfair's system justify

certification of the Rule 23 Pennsylvania Class. Wayfair otherwise denies the allegations in

Paragraph 196.

197.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co., 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

**Answer No. 197:**    Denied.

198.    Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Pennsylvania Class and declaratory relief is appropriate in this case with respect to the Rule 23 Pennsylvania Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**Answer No. 198:**    Denied.

199.    Because Defendant continues to refuse to pay its workers for each and every hour worked, by failing to maintain and account for accurate recordkeeping, the Pennsylvania Class seeks an order from this Court enjoining Defendant from its continued violation of the PMWA and the PWPCL and for an award of civil penalties.

**Answer No. 199:**    Denied.

**200.** Defendant has acted and refused to act on grounds that apply generally to the Class, and because declaratory relief is appropriate in the case with respect to the Pennsylvania Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**<u>Answer No. 200:</u>**    Denied.

## <u>RULE 23 UTAH CLASS ACTION ALLEGATIONS</u>

**201.** Plaintiff Rewis brings this action pursuant to Fed. R. Civ. P. 23(b)(3) on his own behalf and on behalf of:

> ***All current and former CSEs who worked for Defendant in Utah at any time during the applicable statutory period.***

(hereinafter referred to as the "Rule 23 Utah Class"). Plaintiff Rewis reserves the right to amend the putative class definition if necessary.

**<u>Answer No. 201:</u>**    Wayfair admits that Plaintiff Rewis purports to bring this action

pursuant to Fed. R. Civ. P. 23 on behalf of the "Rule 23 Utah Class" defined in Paragraph 201.

Wayfair denies that Plaintiff Rewis may bring any claims on a class-wide basis and denies that

the Rule 23 Utah Class should be certified.

**202.** The members of the Rule 23 Utah Class are so numerous that joinder of all Rule 23 Utah Class members in this case would be impractical.

**<u>Answer No. 202:</u>**    Denied.

**203.** Plaintiff Rewis reasonably estimates that there are hundreds of Rule 23 Utah members. Rule 23 Utah Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

**<u>Answer No. 203:</u>**    Wayfair is without knowledge or information sufficient to form a

belief as to Plaintiff Rewis's estimate of the proposed Rule 23 Utah Class, and therefore denies

the allegations in Paragraph 203.

**204.** There is a well-defined community of interest among Rule 23 Utah Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Utah Class.

**<u>Answer No. 204:</u>**    Denied.

**205.** These common legal and factual questions include, but are not limited to, the following:

a.  Whether the pre-and post-shift time Rule 23 Utah Class members spend on start-up/log-in activities, attending meetings, and shut-down activities off the clock each shift is compensable time;

b.  Whether Defendant failed to pay all "wages" owed to the Rule 23 Utah Class, as contemplated by Utah law;

c.  Whether Defendant unlawfully withheld or diverted wages from the Rule 23 Utah Class in violation of Utah law;

d.  Whether Defendant properly furnished each Rule 23 Utah Class Member with an itemized statement showing the gross pay and deductions;

e.  Whether Defendant failed to timely pay all wages owed to the Rule 23 Utah Class, as required by Utah law; and

f.  Whether the Rule 23 Utah Class members are owed wages for time spent performing pre-, mid-, and post-shift activities discussed herein, as well as time reported by the Rule 23 Utah Class but otherwise not paid, and if so, the appropriate amount thereof.

**Answer No. 205:**    Denied.

206.    Plaintiff Rewis' claims are typical of those of the Rule 23 Utah Class in that he and all other Rule 23 Utah Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices.

**Answer No. 206:**    Denied.

207.    Plaintiff Rewis' claims arise from the same policies, practices, promises and course of conduct as all other Rule 23 Utah Class members' claims and his legal theories are based on the same legal theories as all other Rule 23 Utah Class members.

**Answer No. 207:**    Denied.

208.    Plaintiff Rewis will fully and adequately protect the interests of the Rule 23 Utah Class and he has retained counsel who are qualified and experienced in the prosecution of Utah wage and hour class actions.

**Answer No. 208:**        Wayfair denies that Plaintiff Rewis will fully and adequately

protect the interests of the Rule 23 Utah Class. Wayfair is without knowledge or information

sufficient to form a belief as to the remaining allegations in Paragraph 208, and therefore denies

them.

**209.**    Neither Plaintiff Rewis nor his counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Utah Class.

>    **Answer No. 209:**    Denied.

**210.**    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, inter alia, it is economically infeasible for Rule 23 Utah Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

>    **Answer No. 210:**    Denied.

**211.**    Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

>    **Answer No. 211:**    Denied.

**212.**    This case will be manageable as a Rule 23 Class action. Plaintiff Rewis and his counsel know of no unusual difficulties in this case and Defendant has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

>    **Answer No. 212:**    Wayfair admits that it maintains organized employee records, but

denies that that fact supports Plaintiff Rewis's allegation that Wayfair's system justify

certification of the Rule 23 Utah Class. Wayfair otherwise denies the allegations in Paragraph

212.

**213.**    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co., 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

>    **Answer No. 213:**    Denied.

**214.**    Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Utah Class and declaratory relief is appropriate in this case with respect to the Rule 23 Utah Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

>    **Answer No. 214:**    Denied.

**215.**    Because Defendant continues to refuse to pay its workers for each and every hour worked, by failing to maintain and account for accurate recordkeeping, the Utah Class seeks an order from this Court enjoining Defendant from its continued violation of Utah law and for an award of civil penalties.

**Answer No. 215:**    Denied.

216.    Defendant has acted and refused to act on grounds that apply generally to the Class, and because declaratory relief is appropriate in the case with respect to the Utah Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**Answer No. 216:**    Denied.

## RULE 23 VIRGINIA CLASS ACTION ALLEGATIONS

217.    Plaintiff Clarke brings this action pursuant to Fed. R. Civ. P. 23(b)(3) on her own behalf and on behalf of:

*All current and former CSEs who worked for Defendant in Virgina at any time during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 Virgina Class"). Plaintiff Clarke reserves the right to amend the putative class definition if necessary.

**Answer No. 217:**    Wayfair admits that Plaintiff Clarke purports to bring this action

pursuant to Fed. R. Civ. P. 23 on behalf of the "Rule 23 Virginia Class" defined in Paragraph

217. Wayfair denies that Plaintiff Clarke may bring any claims on a class-wide basis and denies

that the Rule 23 Virginia Class should be certified.

218.    The members of the Rule 23 Virgina Class are so numerous that joinder of all Rule 23 Virgina Class members in this case would be impractical.

**Answer No. 218:**    Denied.

219.    Plaintiff Clarke reasonably estimates that there are hundreds of Rule 23 Virgina members. Rule 23 Virgina Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

**Answer No. 219:**    Wayfair is without knowledge or information sufficient to form a

belief as to Plaintiff Clarke's estimate of the proposed Rule 23 Utah Class, and therefore denies

the allegations in Paragraph 219.

220.    There is a well-defined community of interest among Rule 23 Virgina Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Virgina Class.

**Answer No. 220:**    Denied.

221.    These common legal and factual questions include, but are not limited to, the following:

    a.    Whether the pre-and post-shift time Rule 23 Virgina Class members spend on start-up/log-in activities, attending meetings, and shut-down activities off the clock each shift is compensable time;

    b.    Whether Defendant failed to pay all "wages" owed to the Rule 23 Virgina Class, as contemplated by the VPWA;

    c.    Whether Defendant unlawfully withheld or diverted wages from the Rule 23 Virgina Class in violation of the VPWA;

    d.    Whether Defendant properly furnished each Rule 23 Virgina Class Member with an itemized statement showing the gross pay and deductions;

    e.    Whether Defendant failed to timely pay all wages owed to the Rule 23 Virgina Class, as required by VPWA; and

    f.    Whether the Rule 23 Virgina Class members are owed wages for time spent performing pre-, mid-, and post-shift activities discussed herein, as well as time reported by the Rule 23 Virgina Class but otherwise not paid, and if so, the appropriate amount thereof.

    **Answer No. 221:**    Denied.

222.    Plaintiff Clarke's claims are typical of those of the Rule 23 Virgina Class in that she and all other Rule 23 Virgina Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices.

    **Answer No. 222:**    Denied.

223.    Plaintiff Clarke's claims arise from the same policies, practices, promises and course of conduct as all other Rule 23 Virgina Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Virgina Class members.

    **Answer No. 223:**    Denied.

224.    Plaintiff Clarke will fully and adequately protect the interests of the Rule 23 Virgina Class and she has retained counsel who are qualified and experienced in the prosecution of Virgina wage and hour class actions.

    **Answer No. 224:**    Wayfair denies that Plaintiff Clarke will fully and adequately

protect the interests of the Rule 23 Virginia Class. Wayfair is without knowledge or information

sufficient to form a belief as to the remaining allegations in Paragraph 224, and therefore denies

them.

**225.**    Neither Plaintiff Clarke nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Virgina Class.

    **Answer No. 225:**    Denied.

**226.**    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, inter alia, it is economically infeasible for Rule 23 Virgina Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

    **Answer No. 226:**    Denied.

**227.**    Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

    **Answer No. 227:**    Denied.

**228.**    This case will be manageable as a Rule 23 Class action. Plaintiff Clarke and her counsel know of no unusual difficulties in this case and Defendant has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

    **Answer No. 228:**    Wayfair admits that it maintains organized employee records, but

denies that that fact supports Plaintiff Clarke's allegation that Wayfair's system justify

certification of the Rule 23 Virginia Class. Wayfair otherwise denies the allegations in Paragraph

228.

**229.**    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co., 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

    **Answer No. 229:**    Denied.

**230.**    Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Virgina Class and declaratory relief is appropriate in this case with respect to the Rule 23 Virgina Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

    **Answer No. 230:**    Denied.

**231.**   Because Defendant continues to refuse to pay its workers for each and every hour worked, by failing to maintain and account for accurate recordkeeping, the Virgina Class seeks an order from this Court enjoining Defendant from its continued violation of the VPWA and for an award of civil penalties.

**Answer No. 231:**    Denied.

**232.**   Defendant has acted and refused to act on grounds that apply generally to the Class, and because declaratory relief is appropriate in the case with respect to the Virgina Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**Answer No. 232:**    Denied.

**COUNT I**
**(Rule 23 Colorado Class Action)**
**Colorado Minimum Wage Act, C.R.S. §§ 8-4-101, e*t seq*.**

**258.**   Plaintiff Simmons re-alleges and incorporates all previous paragraphs herein.[2]

**Answer No. 258:**    Wayfair incorporates by reference its answers to all previous

paragraphs.

**259.**   The Colorado Minimum Wage Act (CMWA) governs the activities of and imposes obligations on Defendant as the Colorado Rule 23 Class Members' "employer." C.R.S. § 8-4-101.

**Answer No. 259:**    The allegations in Paragraph 259 contain conclusions of law or

legal arguments to which no response is required. To the extent a response is required, Wayfair

admits that it was Plaintiff Simmons' "employer" within the meaning of the Colorado Minimum

Wage Act (CMWA), but denies that the putative class, "Colorado Rule 23 Class Members,"

should be certified and denies the remaining allegations in Paragraph 259.

**260.**   The CMWA provides that "[a]ll wages or compensation, other than those mentioned in section 8-4-109, earned by any employee in any employment, other than those specified in subsection (3) of this section, shall be due and payable for regular pay periods of no greater duration than one calendar month or thirty days, whichever is longer, and on regular paydays no later than ten days following the close of each pay period unless the employer and the employee

---

[2] 233-257 omitted from the original Plaintiff's complaint. Original numbering used to maintain consistency between Complaint and Answer.

shall mutually agree on any other alternative period of wage or salary payments." C.R.S. § 8-4-103(1)(a).

**Answer No. 260:**    The allegations in Paragraph 260 state conclusions of law or legal arguments to which no response is required. To the extent a response is required, Wayfair admits that Paragraph 260 quotes from the CMWA. To the extent the allegations in Paragraph 260 imply that Wayfair violated the CMWA, Wayfair denies them.

261.    Defendant failed to pay Plaintiff Simmons and the Rule 23 Colorado Class Members all wages due as required by C.R.S. § 8-4-103(1)(a).

**Answer No. 261:**    Denied.

262.    Additionally, Defendant failed to furnish Plaintiff Simmons and the Rule 23 Colorado Class Members with an itemized pay statement in writing showing her gross wages earned and all withholdings and deductions made from her wages for each pay period. C.R.S. § 8¬4-103(4)(a)-(b).

**Answer No. 262:**    Denied.

263.    Defendant unlawfully withheld or diverted the wages of Plaintiff Simmons and the Rule 23 Colorado Class Members, in violation of C.R.S. § 8-4-103(4)(a)-(b).

**Answer No. 263:**    Denied.

264.    Defendant failed to pay all wages immediately due at the time of discharge in violation of C.R.S. § 8-4-109.

**Answer No. 264:**    Denied.

265.    The CMWA provides that "[i]f an employer fails or refuses to pay, in the manner specified in subsection (3)(d) of this section, all earned, vested, and determinable wages or compensation within ... fourteen days after a civil action or administrative claim for the wages or compensation is sent to or served on the employer, the employer is liable to the employee or group of similarly situated employees for the amount of the earned, vested, determinable, and unpaid wages or compensation plus an automatic penalty of the greater of two times the amount of the unpaid wages or compensation or one thousand dollars; or if the employee can show that the employer's failure or refusal to pay wages or compensation was willful, the greater of three times the amount of the unpaid wages or compensation or three thousand dollars." C.R.S. § 8-4-109

**Answer No. 265:**    The allegations in Paragraph 265 state conclusions of law or legal arguments to which no response is required. To the extent a response is required, Wayfair admits

that Paragraph 265 quotes from the CMWA. To the extent the allegations in Paragraph 265 imply

that Wayfair violated the CMWA, Wayfair denies them.

266.    The CMWA provides for a three-year (3) statute of limitations on all such civil claims.
C.R.S. § 8-4-122.

    **Answer No. 266:**    The allegations in Paragraph 266 state conclusions of law or legal

arguments to which no response is required. To the extent a response is required, Wayfair denies

the allegations in Paragraph 266.

## COUNT II
### (Rule 23 Illinois Class Action)
### Illinois Minimum Wage Laws, 820 Ilcs 105/1, *et seq.*

267.    Plaintiff Britton re-alleges and incorporates all previous paragraphs herein.

    **Answer No. 267:**    Wayfair incorporates by reference its answers to all previous

paragraphs.

268.    The Illinois Minimum Wage Law (IMWL) governs the activities of and imposes
obligations on Defendant as the Illinois Rule 23 Class Members' "employer." 820 ILCS
105/3(c).

    **Answer No. 268:**    The allegations in Paragraph 268 contain conclusions of law or

legal arguments to which no response is required. To the extent a response is required, Wayfair

admits that it was Plaintiff Britton's "employer" within the meaning of the Illinois Minimum

Wage Laws (IMWL), but denies that the putative class, "Illinois Rule 23 Class Members,"

should be certified and denies the remaining allegations in Paragraph 268.

269.    The IMWL require employers to maintain detailed records regarding the payment of
wages to employees, which includes the actual hours worked each week. 820 ILCS 105/8.
IMWL requires overtime to be paid at 1.5 times the employee's regular hourly rate for all hours
worked in excess of 40 in a workweek. 820 ILCS 105/4a(1).

    **Answer No. 269:**    The allegations in Paragraph 269 state conclusions of law or legal

arguments to which no response is required. To the extent a response is required, Wayfair denies

the allegations in Paragraph 269 to the extent that they inaccurately or incompletely summarize

the requirements of the IMWL.

**270.**    Under the IMWL, Defendant was obligated to pay Plaintiff Britton and the Rule 23
Illinois Class Members no less than the statutory minimum wage for every hour worked.
Defendant knowingly failed to pay the required minimum wage rate for all compensable time
worked.

> **Answer No. 270:**        The allegations in Paragraph 270 state conclusions of law or legal

arguments to which no response is required. To the extent a response is required, Wayfair admits

that it was obligated to pay Plaintiff Britton no less than the statutory minimum wage for every

hour worked. Wayfair denies the remining allegations in Paragraph 270.

**271.**    Accordingly, Plaintiff Britton and the Rule 23 Illinois Class Members are entitled to
recover unpaid overtime compensation for hours worked in excess of 40 in a workweek, treble
damages, as well as monthly statutory damages on these amounts at the highest applicable rates,
plus attorneys' fees, costs, and expenses. See 820 ILCS 105/12(a).

> **Answer No. 271:**        Denied.

## COUNT III
### (Rule 23 Illinois Class Action)
### Illinois Wage Payment And Collection Act, 820 Ilcs 115/1, *et seq.*

**272.**    Plaintiff Britton re-alleges and incorporates all previous paragraphs herein

> **Answer No. 272:**        Wayfair incorporates by reference its answers to all previous

paragraphs.

**273.**    The Illinois Wage Payment and Collection Act (IWPCA) governs the activities of and
imposes obligations on Defendant as the Illinois Rule 23 Class Members' "employer." 820 ILCS
115/2.

> **Answer No. 273:**        The allegations in Paragraph 273 contain conclusions of law or

legal arguments to which no response is required. To the extent a response is required, Wayfair

admits that it was Plaintiff Britton's "employer" within the meaning of the Illinois Wage

Payment and Collection Act ("IWPCA"), but denies that the putative class, "Illinois Rule 23

Class Members," should be certified and denies the remaining allegations in Paragraph 273.

**274.**    The IWPCA provides that "[e]very employer shall be required, at least semi-monthly, to pay every employee all wages earned during the semi-monthly pay period." 820 ILCS 115/3.

**Answer No. 274:**    The allegations in Paragraph 274 state conclusions of law or legal

arguments to which no response is required. To the extent a response is required, Wayfair admits

that Paragraph 274 quotes from the IWPCA. To the extent the allegations in Paragraph 274 imply

that Wayfair violated the IWPCA, Wayfair denies them.

**275.**    The IWPCA requires an employer to pay all wages earned by an employee who is paid on a weekly basis no later than the week following the end of the pay period in which the wages were earned. 820 ILCS 115/4.

**Answer No. 275:**    The allegations in Paragraph 275 state conclusions of law or legal

arguments to which no response is required. To the extent a response is required, Wayfair denies

the allegations in Paragraph 275 to the extent that they inaccurately or incompletely summarize

the requirements of the IWPCA. Further responding, to the extent the allegations in Paragraph

275 imply that Wayfair violated the IWPCA, Wayfair denies them.

**276.**    Furthermore, the IWPCA provides that "deductions by employers from wages or final compensation are prohibited unless such deductions are (1) required by law; (2) to the benefit of the employee; (3) in response to a valid wage assignment or wage deduction order; (4) made with the express written consent of the employee, given freely at the time the deduction is made ..." 820 ILCS 115/9.

**Answer No. 276:**    The allegations in Paragraph 276 state conclusions of law or legal

arguments to which no response is required. To the extent a response is required, Wayfair admits

that Paragraph 276 quotes from the IWPCA. To the extent the allegations in Paragraph 276 imply

that Wayfair violated the IWPCA, Wayfair denies them.

**277.**    The IWPCA states that an employer is to pay all wages earned by an employee upon separation, or in any event no later than the next regularly scheduled payday following separation. 820 ILCS 115/5.

**Answer No. 277:**    The allegations in Paragraph 277 state conclusions of law or legal

arguments to which no response is required. To the extent a response is required, Wayfair denies

the allegations in Paragraph 277 to the extent that they inaccurately or incompletely summarize the requirements of the IWPCA. Further responding, to the extent the allegations in Paragraph 277 imply that Wayfair violated the IWPCA, Wayfair denies them.

**278.**    The IWPCA requires employers to pay employees, including Plaintiff Britton and the Rule 23 Illinois Class Members, for all the hours they work at the rate(s) agreed to by the parties.

**Answer No. 278:**    The allegations in Paragraph 278 state conclusions of law or legal arguments to which no response is required. To the extent a response is required, Wayfair denies the allegations in Paragraph 278 to the extent that they inaccurately or incompletely summarize the requirements of the IWPCA. Further responding, to the extent the allegations in Paragraph 278 imply that Wayfair violated the IWPCA, Wayfair denies them.

**279.**    Defendant failed to timely pay earned wages to Plaintiff Britton and the Rule 23 Illinois Class Members as a result of unlawful deductions made against the earned wages of Plaintiff Britton and the Rule 23 Illinois Class Members in violation of 820 ILCS 115/9.

**Answer No. 279:**    Denied.

**280.**    Defendant knowingly permitted Plaintiff Britton and the Rule 23 Illinois Class Members to perform work without proper compensation and withheld or delayed payment of earned wages unlawfully, in violation of the IWPCA.

**Answer No. 280:**    Denied.

**281.**    The IWPCA permits Plaintiff Britton and the Rule 23 Illinois Class Members to recover the amount of any wages that are not timely paid and damages of 5% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid, with recovery of costs and all reasonable attorney's fees. 820 ILCS 115/14(a).

**Answer No. 281:**    Denied.

**COUNT IV**
**(Rule 23 North Carolina Class Action)**
**North Carolina Wage And Hour Act, N.C.G.S.A. § 95-25.1, *et seq.***

**282.**    Plaintiff Atkinson re-alleges and incorporates all previous paragraphs herein.

**Answer No. 282:**    Wayfair incorporates by reference its answers to all previous paragraphs.

283.    At all relevant times, Defendant qualified as an "employer" and Plaintiff qualified as an "employee" within the meaning of the North Carolina Wage and Hour Act (NCWHA), N.C.G.S.A. § 95-25.2.

**Answer No. 283:**    The allegations in Paragraph 283 contain conclusions of law or legal arguments to which no response is required. To the extent a response is required, Wayfair admits that it was Plaintiff Atkinson's "employer" and Plaintiff Atkinson was its "employee" within the meaning of the North Carolina Wage and Hour Act ("NCWHA"), but denies that the putative class, "North Carolina Rule 23 Class Members," should be certified and denies the remaining allegations in Paragraph 283.

284.    "Wages" means "[c]ompensation for labor or services rendered by an employee whether determined on a time, task, piece, job, day, commission, or other basis of calculation, and the reasonable cost as determined by the Commissioner of furnishing employees with board, lodging, or other facilities. For the purposes of G.S. 95-25.6 through G.S. 95-25.13 "wage" includes sick pay, vacation pay, severance pay, commissions, bonuses, and other amounts promised when the employer has a policy or a practice of making such payments." N.C.G.S.A. § 95-25.2(16).

**Answer No. 284:**    The allegations in Paragraph 284 state conclusions of law or legal arguments to which no response is required. To the extent a response is required, Wayfair admits that Paragraph 284 quotes from the NCWHA. To the extent the allegations in Paragraph 284 imply that Wayfair violated the NCWHA, Wayfair denies them.

285.    Pursuant to North Carolina Act, N.C.G.S.A. § 95-25.1, et.seq., it is unlawful for an employer to suffer or permit an employee to work without paying promised and earned wages for all hours worked.

**Answer No. 285:**    The allegations in Paragraph 285 state conclusions of law or legal arguments to which no response is required. To the extent a response is required, Wayfair denies the allegations in Paragraph 285 to the extent that they inaccurately or incompletely summarize the requirements of the NCWHA. Further responding, to the extent the allegations in Paragraph 285 imply that Wayfair violated the NCWHA, Wayfair denies them.

**286.**    Pursuant to North Carolina Act, N.C.G.S.A. § 95-25.6, Defendant was required to pay Plaintiff all wages, when due, for all hours of work at her regular rate on their regular pay day.

**Answer No. 286:**    The allegations in Paragraph 286 state conclusions of law or legal arguments to which no response is required. To the extent a response is required, Wayfair denies the allegations in Paragraph 286 to the extent that they inaccurately or incompletely summarize the requirements of the NCWHA. Further responding, to the extent the allegations in Paragraph 285 imply that Wayfair violated the NCWHA, Wayfair denies them.

**287.**    Defendant did not pay Plaintiff all wages due to her for non-overtime hours as a result of the illegal work off-the-clock

**Answer No. 287:**    Denied.

**288.**    At all times relevant, Defendant had knowledge of all work completed by Plaintiff and Defendant permitted Plaintiff to perform such work and did not pay her the promised wages for hours worked.

**Answer No. 288:**    Denied.

**289.**    Accordingly, Plaintiff is entitled to receive all compensation of non-overtime "wages" due and owing to her.

**Answer No. 289:**    Wayfair admits that Plaintiff Atkinson is entitled to receive all compensation of non-overtime "wages" due and owing to her. Wayfair denies that it failed to pay Plaintiff Atkinson all compensation of non-overtime "wages" due and owing to her.

**290.**    Defendant willfully failed to pay Plaintiff all "wages," and withheld such wages as defined in §§ 95-25.1 and 95.25.8 of the North Carolina Act for all work performed, according to the law.

**Answer No. 290:**    Denied.

**291.**    Defendant has withheld wages of Plaintiff without providing advance notice of such amounts and absent any lawfully sufficient reason for such conduct. N.C.G.S.A. §§ 95-25.8 and 95-25.13.

**Answer No. 291:**    Denied.

292.    As a direct and proximate result of Defendant's willful conduct, Plaintiff has suffered substantial losses and is entitled to recover her unpaid wages, liquidated damages, and attorneys' fees and costs pursuant to North Carolina Wage and Hour Act, N.C.G.S.A. § 95-25.22.

**Answer No. 292:**    Denied.

## COUNT V
### (Rule 23 Nevada Class Action)
### Nevada Payment and Collection of Wages and Other Benefits,
### Failure to Pay Wages for All Hours Worked in Violation of N.R.S. §§ 608.140 AND 608.016

293.    Plaintiff Waller re-alleges and incorporates all previous paragraphs herein.

**Answer No. 293:**    Wayfair incorporates by reference its answers to all previous

paragraphs.

294.    The Nevada Payment and Collection of Wages and Other Benefits (NPCW) governs the activities of and imposes obligations on Defendant as the Nevada Rule 23 Class Members' "employer." N.R.S. § 608.011.

**Answer No. 294:**    The allegations in Paragraph 294 contain conclusions of law or

legal arguments to which no response is required. To the extent a response is required, Wayfair

admits that it was Plaintiff Waller's "employer" within the meaning of the Nevada Payment and

Collection of Wages and Other Benefits ("NPCW"), but denies that the putative class, "Nevada

Rule 23 Class Members," should be certified and denies the remaining allegations in Paragraph

294.

295.    NRS 608.140 provides that an employee has a private right of action for unpaid wages: "Whenever a mechanic, artisan, miner, laborer, servant or employee shall have cause to bring suit for wages earned and due according to the terms of his or her employment, and shall establish by decision of the court or verdict of the jury that the amount for which he or she has brought suit is justly due, and that a demand has been made, in writing, at least 5 days before suit was brought, for a sum not to exceed the amount so found due, the court before which the case shall be tried shall allow to the plaintiff a reasonable attorney fee, in addition to the amount found due for wages and penalties, to be taxed as costs of suit." Plaintiff Waller and the Rule 23 Nevada Class Members has made a demand for unpaid wages upon Defendant pursuant to NRS 608.140, but satisfactory payment was not received.

**Answer No. 295:**    The allegations in Paragraph 260 state conclusions of law or legal

arguments to which no response is required. To the extent a response is required, Wayfair admits

that Paragraph 295 quotes from the NPCW. To the extent the allegations in Paragraph 295 imply that Wayfair violated the NPCW, Wayfair denies them. Wayfair denies that Plaintiff Waller and the purported "Rule 23 Nevada Class members" made a demand compliant with NRS 608.140.

296.    At all relevant times, Defendant employed Plaintiff Waller and the Rule 23 Nevada Class Members as "employees" within the meaning of NRS 608.010.

**Answer No. 296:**    The allegations in Paragraph 296 state conclusions of law or legal arguments to which no response is required. To the extent a response is required, Wayfair admits that Plaintiff Waller was an "employee" of Wayfair within the meaning of 608.010. Wayfair is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 296, and therefore denies them.

297.    NRS 608.016 requires an employer like Defendant to pay employees wages (as defined by NRS 608.012) "for each hour the employee works."

**Answer No. 297:**    The allegations in Paragraph 297 state conclusions of law or legal arguments to which no response is required. To the extent a response is required, Wayfair admits that Paragraph 297 quotes from the NPCW. To the extent the allegations in Paragraph 297 imply that Wayfair violated the NPCW, Wayfair denies them.

298.    Defendant did not pay Plaintiff Waller and the Rule 23 Nevada Class Members wages for each hour worked

**Answer No. 298:**    Denied.

299.    As a result of Defendant's failure to pay Plaintiff Waller and the Rule 23 Nevada Class Members wages for each hour worked, Defendant violated NRS 608.016.

**Answer No. 299:**    Denied.

300.    Plaintiff Waller and the Rule 23 Nevada Class Members are entitled to their regular rate of pay for all hours worked during the relevant time period together with attorneys' fees, costs, and interest as provided by law.

**Answer No. 300:**    Denied.

## COUNT VI

**(Rule 23 Nevada Class Action)**
**Nev. Const. Art. Xv, Sec. 16, Failure to Pay Minimum Wages**

**301.**    Plaintiff Waller re-alleges and incorporates all previous paragraphs herein.

**Answer No. 301:**    Wayfair incorporates by reference its answers to all previous

paragraphs.

**302.**    At all relevant times, Defendant was and is an "employer" within the meaning of Nev. Const. Art. XV, Sec. 16.

**Answer No. 302:**    The allegations in Paragraph 302 contain conclusions of law or

legal arguments to which no response is required. To the extent a response is required, Wayfair

admits the allegations in Paragraph 302.

**303.**    At all relevant times, Defendant employed Plaintiff Waller and the Rule 23 Nevada Class Members as "employees" within the meaning of Nev. Const. Art. XV, Sec. 16.

**Answer No. 303:**    The allegations in Paragraph 303 state conclusions of law or legal

arguments to which no response is required. To the extent a response is required, Wayfair admits

that Plaintiff Waller was an "employee" of Wayfair within the meaning of Nev. Const. Art. XV,

Sec. 16. Wayfair is without knowledge or information sufficient to form a belief as to the

remaining allegations in Paragraph 303, and therefore denies them.

**304.**    Nev. Const. Art. XV, Sec. 16. sets forth the requirements the minimum wage requirements in the State of Nevada and further provides that "[t]he provisions of the section may not be waived by agreement between an individual employee and an employer.... An employee claiming violation of the section may bring an action against his or her employer in the courts of the State to enforce the provisions of the section and shall be entitled to all remedies available under the law or in equity appropriate to remedy any violation of the section, including but not limited to back pay, damages, reinstatement or injunctive relief. An employee who prevails in any action to enforce the section shall be awarded his or her reasonable attorney's fees and costs."

**Answer No. 304:**    The allegations in Paragraph 304 state conclusions of law or legal

arguments to which no response is required. To the extent a response is required, Wayfair admits

that Paragraph 304 quotes from Nev. Const. Art. XV, Sec. 16. To the extent the allegations in

Paragraph 260 imply that Wayfair violated Nev. Const. Art. XV, Sec. 16. or that Plaintiff Waller

and the purported Nevada Rule 23 Class Members are entitled to the remedies listed in Nev.

Const. Art. XV, Sec. 16., Wayfair denies them.

**305.**    Defendant did not pay Plaintiff Waller and the Rule 23 Nevada Class Members the requisite minimum wages for all hours worked in each work week.

    **Answer No. 305:**    Denied.

**306.**    As a result of Defendants' failure to pay Plaintiff Waller and the Rule 23 Nevada Class Members the requisite wages for each hour worked, Defendant violated Nev. Const. Art. XV, Sec. 16.

    **Answer No. 306:**    Denied.

**307.**    Defendant was aware that Plaintiff Waller and the Rule 23 Nevada Class Members were entitled to a minimum wage guaranteed by Nev. Const. Art. XV, Sec. 16.

    **Answer No. 307:**    Wayfair admits that is aware that its Nevada-based remote

customer service employees are entitled to the state's minimum wage. To the extent that the

allegations in Paragraph 307 imply that Wayfair failed to pay its Nevada-based remote customer

service employees the required minimum wage, Wayfair denies them.

**308.**    Defendants' failure to pay Plaintiff Waller and the Rule 23 Nevada Class Members all wages due was willful and not the result of mistake or inadvertence.

    **Answer No. 308:**    Denied.

**309.**    Plaintiff Waller and the Rule 23 Nevada Class Members are entitled to all unpaid wages, pre and post judgment interest due on such sums at the highest rate permitted by law, exemplary and punitive damages, and for their attorneys' fees and costs.

    **Answer No. 309:**    Denied.

**COUNT VII**
**Nevada Payment And Collection of Wages and Other Benefits,**
**Failure to Pay Overtime Wages in Violation of N.R.S. §§ 608.140 and 608.018**

**310.**    Plaintiff Waller re-alleges and incorporates all previous paragraphs herein.

**Answer No. 310:**    Wayfair incorporates by reference its answers to all previous paragraphs.

311.    At all relevant times, Defendant was and is an "employer" within the meaning of NRS 608.011.

**Answer No. 311:**    The allegations in Paragraph 311 contain conclusions of law or legal arguments to which no response is required. To the extent a response is required, Wayfair admits the allegations in Paragraph 311.

312.    At all relevant times, Defendant employed Plaintiff Waller and the Rule 23 Nevada Class Members as "employees" within the meaning of NRS 608.010.

**Answer No. 312:**    The allegations in Paragraph 312 state conclusions of law or legal arguments to which no response is required. To the extent a response is required, Wayfair admits that Plaintiff Waller was an "employee" of Wayfair within the meaning of NRS 608.010. Wayfair is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 312, and therefore denies them.

313.    NRS 608.140 provides that an employee has a private right of action for unpaid wages.

**Answer No. 313:**    The allegations in Paragraph 313 state conclusions of law or legal arguments to which no response is required. To the extent a response is required, Wayfair denies the allegations in Paragraph 313 to the extent that they inaccurately or incompletely summarize NRS 608.140. Further responding, to the extent the allegations in Paragraph 313 imply that Wayfair violated NRS 608.140, Wayfair denies them.

314.    NRS 608.018(1) provides as follows:

An employer shall pay 1 1/2 times an employee's regular wage rate whenever an employee who receives compensation for employment at a rate less than 1 1/2 times the minimum rate set forth in NRS 608.250 works: (a) More than 40 hours in any scheduled week of work; or (b) More than 8 hours in any workday unless by mutual agreement the employee works a scheduled 10 hours per day for 4 calendar days within any scheduled week of work.

**Answer No. 314:**     The allegations in Paragraph 314 state conclusions of law or legal arguments to which no response is required. To the extent a response is required, Wayfair admits that Paragraph 314 quotes from the NRS 608.018(1). To the extent the allegations in Paragraph 314 imply that Wayfair violated NRS 608.018(1), Wayfair denies them.

315.    NRS 608.018(2) provides as follows:

> An employer shall pay 1 1/2 times an employee's regular wage rate whenever an employee who receives compensation for employment at a rate not less than 1 1/2 times the minimum rate set forth in NRS 608.250 works more than 40 hours in any scheduled week of work.

**Answer No. 315:**     The allegations in Paragraph 315 state conclusions of law or legal arguments to which no response is required. To the extent a response is required, Wayfair admits that Paragraph 315 quotes from NRS 608.018(2). To the extent the allegations in Paragraph 315 imply that Wayfair violated NRS 608.018(2), Wayfair denies them.

316.    Defendant did not pay Plaintiff Waller and the Rule 23 Nevada Class Members the requisite overtime wages as defined herein for all overtime hours worked in each work week.

**Answer No. 316:**     Denied.

317.    As a result of Defendants' failure to pay Plaintiff Waller and the Rule 23 Nevada Class Members the requisite overtime wages for all overtime hours worked in each workweek, Defendant violated NRS 608.018.

**Answer No. 317:**     Denied.

318.    WHEREFORE, Plaintiff Waller and the Rule 23 Nevada Class Members are entitled to all unpaid overtime wages, together with attorneys' fees, costs, and interest as provided by law.

**Answer No. 318:**     Denied.

## COUNT VIII
### (Rule 23 New York Class Action)
### New York Labor Law, Article 19 § 650, *et seq*.

319.    Plaintiff Williams re-alleges and incorporates all previous paragraphs herein.

**Answer No. 319:**     Wayfair incorporates by reference its answers to all previous paragraphs.

320.    The New York Labor Law (NYLL) governs the activities of and imposes obligations on Defendant as the New York Rule 23 Class Members' "employer." NYLL, Article 19, § 651.

**Answer No. 320:**     The allegations in Paragraph 320 contain conclusions of law or legal arguments to which no response is required. To the extent a response is required, Wayfair admits that it was Plaintiff Williams' "employer" within the meaning of the New York Labor Law ("NYLL"), but denies that the putative class, "New York Rule 23 Class Members," should be certified and denies the remaining allegations in Paragraph 320.

321.    NYLL mandates payment of a statutory minimum wage, currently established by NYLL, Article 19 § 652, for each hour worked by employees.

**Answer No. 321:**     The allegations in Paragraph 321 state conclusions of law or legal arguments to which no response is required. To the extent a response is required, Wayfair admits that the NYLL mandates payment of a statutory minimum wage. Further responding, to the extent the allegations in Paragraph 321 imply that Wayfair violated the NYLL, Wayfair denies them.

322.    "Wage" under NYLL includes "allowances, in the amount determined in accordance with the provisions of this article, for gratuities and, when furnished by the employer to employees, for meals, lodging, apparel, and other such items, services and facilities". NYLL, Article 19 § 651.

**Answer No. 322:**     The allegations in Paragraph 322 state conclusions of law or legal arguments to which no response is required. To the extent a response is required, Wayfair admits that Paragraph 322 quotes from the NYLL. To the extent the allegations in Paragraph 322 imply that Wayfair violated the NYLL, Wayfair denies them.

323.    Defendant had policies and practices of requiring Plaintiff Williams and the Rule 23 New York Class Members to perform compensable pre-shift, meal-period, and post-shift work without compensation.

**Answer No. 323:**    Denied.

**324.**    Defendant's failure to pay wages was knowing and willful, demonstrating deliberate disregard for Plaintiff Williams and the Rule 23 New York Class Members rights under the NYLL.

**Answer No. 324:**    Denied.

**325.**    As a result of Defendant's conduct, Plaintiff Williams and the Rule 23 New York Class Members are entitled to unpaid wages, liquidated damages equal to their unpaid wages, prejudgment and post-judgment interest, reasonable attorneys' fees, and costs pursuant to the NYLL.

**Answer No. 325:**    Denied.

## COUNT IX
### (Rule 23 New York Class Action)
### Overtime Wages, New York Labor Law, Article 19 § 650, *et seq.*

**326.**    Plaintiff Williams re-alleges and incorporates all previous paragraphs herein

**Answer No. 326:**    Wayfair incorporates by reference its answers to all previous

paragraphs.

**327.**    The overtime provisions of the NYLL and its supporting regulations applies to Defendants and protects Plaintiff Williams and the Rule 23 New York Class Members.

**Answer No. 327:**    The allegations in Paragraph 327 state conclusions of law or legal

arguments to which no response is required. To the extent a response is required, Wayfair admits

that the overtime provisions of the NYLL apply to it, Plaintiff Williams, and any other New York

CSEs.

**328.**    Defendants failed to pay Plaintiff Williams and the Rule 23 New York Class Members the premium overtime wages to which they were entitled under the NYLL – at a rate of 1.5 times their regular rate of pay for all hours worked beyond 40 per workweek.

**Answer No. 328:**    Denied.

**329.**    Through its knowing or intentional failure to pay Plaintiff Williams and the Rule 23 New York Class Members the appropriate overtime wages for hours worked in excess of 40 hours per workweek, Defendant willfully violated the NYLL, Article 19, § 650 et seq., and supporting New York State Department of Labor regulations.

**Answer No. 329:**    Denied.

**330.**    Due to Defendants' violations of the NYLL, Plaintiff Williams and the Rule 23 New York Class Members are entitled to recover from Defendant their unpaid overtime wages, liquidated damages, pre-judgment and post-judgment interest, and reasonable attorneys' fees and costs pursuant to the NYLL.

**Answer No. 330:**    Denied.

## COUNT X
### (Rule 23 New York Class Action)
### Proper Annual Wage Notices, New York Labor Law, Article 6 § 190, *et seq.*

**331.**    Plaintiff Williams re-alleges and incorporates all previous paragraphs herein.

**Answer No. 331:**    Wayfair incorporates by reference its answers to all previous

paragraphs.

**332.**    Defendants have failed to furnish pursuant to the NYLL with proper annual wage notices as required by NYLL, Article 6, § 195(1)(a),

> Provide his or her employees, in English or in the language identified by each employee as their primary language, at the time of hiring, a notice containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; ... the regular pay day designated by the employer in accordance with NYLL, Article 6, § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

**Answer No. 332:**    The allegations in Paragraph 332 state conclusions of law to which

no response is required. To the extent a response is required, Wayfair admits that Paragraph 332

quotes from the NYLL, but denies that Wayfair failed to furnish any required notices.

**333.**    Due to Defendants' violations of NYLL, Article 6, § 195(1), Plaintiff Williams and the Rule 23 New York Class Members are entitled to statutory penalties of fifty dollars each workday that Defendants failed to provide Plaintiff Williams and the Rule 23 New York Class Members with annual wage notices, or a total of five thousand dollars each, and reasonable attorneys' fees and costs, as provided for by NYLL, Article 6, § 198(1-b).

**Answer No. 333:**    Denied.

## COUNT XI
### (Rule 23 New York Class Action)
### Accurate Wage Statements, New York Labor Law, Article 6 § 190, *et seq.*

**334.**    Plaintiff Williams re-alleges and incorporates all previous paragraphs herein.

**Answer No. 334:**    Wayfair incorporates by reference its answers to all previous

paragraphs.

**335.**    Defendants failed to supply Plaintiff Williams and the Rule 23 New York Class Members with an accurate statement of wages with every payment of wages as required by NYLL, Article 6, § 195(3), listing: dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

**Answer No. 335:**    Denied.

**336.**    Due to Defendants' violations of NYLL, Article 6, § 195(3), Plaintiff Williams and the Rule 23 New York Class Members are entitled to statutory penalties of two hundred fifty dollars for each workday that Defendants failed to provide them with accurate wage statements, or a total of five thousand dollars each, and reasonable attorneys' fees and costs, as provided for by NYLL, Article 6, § 198 (1-d).

**Answer No. 336:**    Denied.

## COUNT XII
### (Rule 23 New York Class Action)
### Unlawful Wage Deduction, New York Labor Law, Article 6 § 190, *et seq.*

**337.**    Plaintiff Williams re-alleges and incorporates all previous paragraphs herein.

**Answer No. 337:**    Wayfair incorporates by reference its answers to all previous

paragraphs.

**338.**    NYLL, Article 6, § 193 prohibits an employer from making any deductions from employee wages except as expressly permitted by law or authorized in writing by the employee.

**Answer No. 338:**    The allegations in Paragraph 338 state conclusions of law or legal

arguments to which no response is required. To the extent a response is required, Wayfair denies

the allegations in Paragraph 338 to the extent that they inaccurately or incompletely summarize

the NYLL. Further responding, to the extent the allegations in Paragraph 338 imply that Wayfair

violated the NYLL, Wayfair denies them.

**339.**    Defendant unlawfully withheld or deducted portions of wages, including compensable time worked pre-shift, during meal-periods, and post-shift, without proper authorization from Plaintiff Williams and the Rule 23 New York Class Members.

> **Answer No. 339:**    Denied.

**340.**    Defendant's unauthorized deductions were deliberate and constitute willful violations of the NYLL.

> **Answer No. 340:**    Denied.

**341.**    As a result of Defendant's unlawful conduct, Plaintiff Williams and the Rule 23 New York Class Members are entitled to recover amounts of unlawful wage deductions, liquidated damages of these deductions, prejudgment and post-judgment interest, attorneys' fees, costs, and further relief pursuant to NYLL Article 6, § 198.

> **Answer No. 341:**    Denied.

## <u>COUNT XIII</u>
### (Rule 23 Pennsylvania Class Action)
### Pennsylvania Minimum Wage Act, 43 P.S. § 333.101, *et seq.*

**342.**    Plaintiff Taylor re-alleges and incorporates all previous paragraphs herein.

> **Answer No. 342:**    Wayfair incorporates by reference its answers to all previous

paragraphs.

**343.**    At all relevant times, Plaintiff Taylor and the Rule 23 Pennsylvania Class Members were "employees" under the Pennsylvania Minimum Wage Act (PMWA), 43 P.S. § 333.103(h) to include any individual employed by an employer.

> **Answer No. 343:**    The allegations in Paragraph 343 contain conclusions of law or

legal arguments to which no response is required. To the extent a response is required, Wayfair

states that the allegations in Paragraph 343 are vague and ambiguous, and therefore denies them.

**344.**    At all relevant times, Defendant is an "employer" as defined by 43 P.S. § 333.103(g), meaning "any individual, partnership, association, corporation, business trust, or any person or group acting directly or indirectly in the interest of an employer in relation to any employee."

**Answer No. 344:**    The allegations in Paragraph 344 contain conclusions of law or legal arguments to which no response is required. To the extent a response is required, Wayfair admits the allegations in Paragraph 344.

345.    The PMWA requires employers to pay employees a minimum wage of at least $7.25 per hour for all hours worked, as specified in 43 P.S. § 333.104(a.1).

**Answer No. 345:**    The allegations in Paragraph 259 contain conclusions of law or legal arguments to which no response is required. To the extent a response is required, Wayfair admits the allegations in Paragraph 345.

346.    The PMWA requires employers to pay employees overtime compensation at a rate "not less than one and one-half times the employee's regular rate" for all hours worked over forty (40) in a workweek. 43 P.S. § 333.104(c).

**Answer No. 346:**    The allegations in Paragraph 346 state conclusions of law or legal arguments to which no response is required. To the extent a response is required, Wayfair denies the allegations in Paragraph 346 to the extent that they inaccurately or incompletely summarize the PMWA. Further responding, to the extent the allegations in Paragraph 346 imply that Wayfair violated the PMWA, Wayfair denies them.

347.    Defendant maintained policies and practices requiring Plaintiff Taylor and the Rule 23 Pennsylvania Class Members to perform uncompensated work tasks such as pre-shift, meal-period, and post-shift activities.

**Answer No. 347:**    Denied.

348.    As a direct and proximate cause, Plaintiff Taylor and the Rule 23 Pennsylvania Class Members hourly wages fell below the legally mandated minimum wage.

**Answer No. 348:**    Denied.

349.    Defendant's failure to pay the statutory minimum wage was willful, intentional, and in violation of the PMWA, demonstrating a deliberate disregard for employee rights under Pennsylvania law.

**Answer No. 349:**    Denied.

**350.**    As a result, Plaintiff Taylor and the Rule 23 Pennsylvania Class Members are entitled to recover all unpaid wages, statutory penalties, liquidated damages, interest, attorneys' fees, and costs pursuant to 43 P.S. § 333.113.

> **Answer No. 350:**    Denied.

## COUNT XIV
### (Rule 23 Pennsylvania Class Action)
### Pennsylvania Wage Payment Collection Law, 43 P.S. § 260.1, *et seq.*

**351.**    Plaintiff Taylor re-alleges and incorporates all previous paragraphs herein.

> **Answer No. 351:**    Wayfair incorporates by reference its answers to all previous

paragraphs.

**352.**    At all relevant times, Defendant qualifies as an "employer" under the Pennsylvania Wage Payment Collection Law (PWPCL), which "[i]ncludes every person, firm, partnership, association, corporation, receiver or other officer of a court of this Commonwealth and any agent or officer of any of the above-mentioned classes employing any person in this Commonwealth." 43 P.S. § 260(2a).

> **Answer No. 352:**    The allegations in Paragraph 352 contain conclusions of law or

legal arguments to which no response is required. To the extent a response is required, Wayfair

admits the allegations in Paragraph 352.

**353.**    Under the PWPCL, "[e]very employer shall pay all wages, other than fringe benefits and wage supplements, due to his employes on regular paydays designated in advance by the employer." 43 P.S. § 260.3.

> **Answer No. 353:**    The allegations in Paragraph 353 state conclusions of law or legal

arguments to which no response is required. To the extent a response is required, Wayfair admits

that Paragraph 353 quotes from the PWPCL. To the extent the allegations in Paragraph 353

imply that Wayfair violated the PWPCL, Wayfair denies them.

**354.**    The PWPCL provides that "wages" include "all earnings of an employe, regardless of whether determined on time, task, piece, commission or other method of calculation. The term "wages" also includes fringe benefits or wage supplements whether payable by the employer from his funds or from amounts withheld from the employes' pay by the employer." 43 P.S. § 260(2a).

**Answer No. 354:**     The allegations in Paragraph 354 state conclusions of law or legal arguments to which no response is required. To the extent a response is required, Wayfair admits that Paragraph 354 quotes from the PWPCL. To the extent the allegations in Paragraph 354 imply that Wayfair violated the PWPCL, Wayfair denies them.

355.     Defendant consistently failed to pay Plaintiff Taylor and the Rule 23 Pennsylvania Class Members timely wages for compensable work performed violating the statutory requirements of timely payment established by the WPCL.

**Answer No. 355:**     Denied.

356.     Defendant's failure to pay earned wages was intentional, willful, and conducted with disregard for its obligations under Pennsylvania law.

**Answer No. 356:**     Denied.

357.     As a result, Plaintiff Taylor and the Rule 23 Pennsylvania Class Members are entitled to recover unpaid wages, liquidated damages amounting to 25% of total wages due or $500.00 per payday violation, whichever is greater, attorneys' fees, costs, pre- and post-judgment interest, and all further relief available under 43 P.S. §§ 260.9a and 260.10.

**Answer No. 357:**     Denied.

### COUNT XV
### (Rule 23 Utah Class Action)
### Utah Payment Of Wages Act, Utah Code Ann. § 34-28-1, *et seq.*

358.     Plaintiff Rewis re-alleges and incorporates all previous paragraphs herein

**Answer No. 358:**     Wayfair incorporates by reference its answers to all previous paragraphs.

359.     Under the Utah Payment of Wages Act (UPWA), "wages" are defined broadly to mean "the amounts due the employee for labor or services, whether the amount is fixed or ascertained on a time, task, piece, commission basis or other method of calculating such amount." Utah Code Ann. § 34-28-2(1)(i).

**Answer No. 359:**     The allegations in Paragraph 359 state conclusions of law to which no response is required. To the extent a response is required, Wayfair admits that Paragraph 359

quotes from the UPWA. To the extent the allegations in Paragraph 359 imply that Wayfair

violated the UPWA, Wayfair denies them.

**360.**   At all relevant times, Defendant qualifies as an "employer" under Utah Code Ann. § 34-28-2(1)(c).

> **Answer No. 360:**   The allegations in Paragraph 360 state conclusions of law to which

no response is required. To the extent a response is required, Wayfair admits the allegations in

Paragraph 360.

**361.**   Defendant failed to pay Plaintiff Rewis and the Rule 23 Utah Class Members wages for compensable work performed resulting in unpaid wages due and owing.

> **Answer No. 361:**   Denied.

**362.**   Under the UPWA, employers are required to pay wages on designated paydays established by the employer in advance, as mandated by Utah Code Ann. §§ 34-28-3 and 34-28-5

> **Answer No. 362:**   The allegations in Paragraph 362 state conclusions of law or legal

arguments to which no response is required. To the extent a response is required, Wayfair denies

the allegations in Paragraph 362 to the extent that they inaccurately or incompletely summarize

the UPWA. Further responding, to the extent the allegations in Paragraph 362 imply that Wayfair

violated the UPWA, Wayfair denies them.

**363.**   Defendant routinely failed to pay Plaintiff Rewis and the Rule 23 Utah Class Members all earned wages on the designated paydays.

> **Answer No. 363:**   Denied.

**364.**   Pursuant to Utah Code Ann. § 34-28-9.5, an employee has a private right of action for a wage claim in court and employers are liable for unpaid wages and penalties for failing to pay wages timely and completely.

> **Answer No. 364:**   The allegations in Paragraph 364 state conclusions of law or legal

arguments to which no response is required. To the extent a response is required, Wayfair denies

the allegations in Paragraph 364 to the extent that they inaccurately or incompletely summarize

the UPWA. Further responding, to the extent the allegations in Paragraph 364 imply that Wayfair

violated the UPWA, Wayfair denies them.

**365.** Defendant's failure to pay wages was willful and deliberate, resulting in liability for the unpaid wages owed to Plaintiff Rewis and the Rule 23 Utah Class Members.

    **Answer No. 365:**    Denied.

**366.** As a result, Defendant is liable for the total unpaid wages plus a penalty of 2.5% of unpaid wages accruing daily from the date wages became due until paid, attorneys' fees, court costs, and interest, as authorized under Utah Code Ann. §§ 34-28-9.5(3) and 34-27-1.

    **Answer No. 366:**    Denied.

**COUNT XVI**
**(Rule 23 Virgina Class Action)**
**Virgina Wage Payment Act, Va. Code 40.1-29, *et seq*.**

**367.** Plaintiff Clarke re-alleges and incorporates all previous paragraphs herein.

    **Answer No. 367:**    Wayfair incorporates by reference its answers to all previous

paragraphs.

**368.** At all relevant times, Defendant qualified as an "employer" and Plaintiff Clarke and the Rule 23 Virgina Class Members qualified as "employees" within the meaning of the Virginia Wage Payment Act, V.A. CODE ANN. § 40.1-29.2.

    **Answer No. 368:**    The allegations in Paragraph 259 contain conclusions of law or

legal arguments to which no response is required. To the extent a response is required, Wayfair

admits that it is an "employer" and Plaintiff Clarke was its "employee" within the meaning of the

Virginia Wage Payment Act. Wayfair is without knowledge or information sufficient to form a

belief as to the remaining obligations in Paragraph 368 and therefore denies them.

**369.** Virginia Code § 40.1-29(C) provides that "[n]o employer shall withhold any part of the wages or salaries of any employee except for payroll, wage or withholding taxes or in accordance with the law, without the written and signed authorization of the employee."

    **Answer No. 369:**    The allegations in Paragraph 369 state conclusions of law or legal

arguments to which no response is required. To the extent a response is required, Wayfair admits

that Paragraph 369 quotes from Virginia Code § 40.1-29(C). To the extent the allegations in

Paragraph 369 imply that Wayfair violated Virginia Code § 40.1-29(C), Wayfair denies them.

**370.**    At all times relevant, Defendant had knowledge of all work completed by Plaintiff Clarke and the Rule 23 Virginia Class Members and Defendant permitted Plaintiff Clarke and the Rule 23 Virginia Class Members to perform such work and did not pay them their wages for hours worked.

 **Answer No. 370:**    Denied.

**371.**    Defendant knew Plaintiff Clarke and the Rule 23 Virginia Class Members were owed wages and failed to pay the wages despite such knowledge

 **Answer No. 371:**    Denied.

**372.**    Defendant did not have an adequate basis for withholding Plaintiff Clarke and the Rule 23 Virginia Class Members wages.

 **Answer No. 372:**    Wayfair denies that it "withheld" any wages owed to Plaintiff

Clarke or the purported "Ruel 23 Virginia Class Members."

**373.**    Accordingly, Plaintiff Clarke and the Rule 23 Virginia Class Members are entitled to receive all compensation of "wages" due and owing.

 **Answer No. 373:**    Wayfair admits that Plaintiff Clarke and the purported "Rule 23

Virginia Class Members" are entitled to receive all compensation of "wages" due and owing to

them. Wayfair denies that it failed to pay Plaintiff Clarke or the purported "Virginia Rule 23

Class Members" all compensation of "wages" due and owing to them. Further responding,

Wayfair further denies that the putative class, "Virginia Rule 23 Class members, should be

certified.

**374.**    Because Defendants' violations of the Virginia Code have been willful, a three-year statute of limitations applies pursuant to V.A. CODE ANN. § 40.1-29(J).

 **Answer No. 374:**    Denied.

**375.**    As a result of Defendants' willful violations of the Virginia Code, Plaintiff Clarke and the Rule 23 Virginia Class Members have suffered damages by being denied wages in accordance with V.A. CODE ANN. § 40.1-29, et seq.

**Answer No. 375:**    Denied.

**376.**    As a direct and proximate result of Defendants' knowingly, willful, and intentional conduct, Plaintiff Clarke and the Rule 23 Virginia Class Members have suffered substantial losses and has been deprived of wages to which they are entitled, including interest at eight (8) per centum per annum and monetary damages in the amount of three (3) times the amount of their unpaid wages as well as costs and reasonable attorneys' fees pursuant to V.A. CODE ANN. § 40.1-29(G) and (J).

**Answer No. 376:**    Denied.

## RELIEF REQUESTED BY PLAINTIFFS

No response is required to the "Prayer for Relief" section of the Complaint. To the extent a response is required, Wayfair denies that Plaintiffs are entitled to any of the relief sought h in subparts (a) through (r).

## DEFENSES

1.    The Complaint should be dismissed because the Named Plaintiffs have failed to state a claim upon which relief may be granted against Wayfair.

2.    The claims of the Named Plaintiffs and any member of the putative classes that the Named Plaintiffs seek to represent are barred in whole or in part by the applicable statute of limitations, including but not limited to 29 U.S.C. § 255 and the applicable laws of Colorado, Illinois, North Carolina, Nevada, New York, Pennsylvania, Utah and Virginia.

3.    Each of Counts I through XVI cannot be maintained as a class action because the Named Plaintiffs and putative classes cannot satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure, including without limitation because the Named Plaintiffs are not adequate class representatives, the Named Plaintiffs' claims are not typical of the claims of individuals they seek to represent, individual issues will predominate, the putative classes are not

cohesive, and a class action is not a superior method for the fair, efficient, and manageable adjudication of the various claims.

4.      Jurisdiction is not proper in this Court over alleged class claims based on the laws of Colorado, Illinois, North Carolina, Nevada, New York, Pennsylvania, Utah and Virginia, purportedly with binding effect on putative class members based exclusively in those states.

5.      This action cannot be maintained as a class action because class certification would violate Wayfair's rights under the United States Constitution, including without limitation the Fifth, Seventh, and Fourteenth Amendments, and its rights to due process.

6.      The Named Plaintiffs are not entitled to certification of a class because an individual analysis of the Named Plaintiffs' claims and the alleged claims of any purported class members is required, as well as an individual analysis of Wayfair's defenses as they apply to each Named Plaintiff and each alleged member of a class.

7.      The Named Plaintiffs fail to allege a cognizable class under any applicable laws or rules governing the maintenance of class actions.

8.      The claims of the Named Plaintiffs and any member of the putative classes that the Named Plaintiffs seek to represent are barred because they were paid in accordance with and received compensation for all time worked under all applicable state laws.

9.      The claims of the Named Plaintiffs and any member of the putative classes that the Named Plaintiffs seek to represent are barred, in whole or in part, because the time periods for which they are claiming entitlement to additional compensation were *de minimis*.

10.     The claims of the Named Plaintiffs and any member of the putative classes that the Named Plaintiffs seek to represent are barred, in whole or in part, because during the time

periods for which they are claiming entitlement to additional compensation, they were engaged in activities preliminary or postliminary to their principal activities.

11.     The claims of the Named Plaintiffs and any member of the putative classes that the Named Plaintiffs seek to represent are barred, in whole or in part, to the extent compensation is sought for time that is not compensable work time, and because Wayfair did not request, suffer, or permit the work in question.

12.     The claims of the Named Plaintiffs and any member of the putative classes that the Named Plaintiffs seek to represent are barred, in whole or in part, because they seek compensation for activities that are not compensable or time that is not considered "working time" under the applicable state laws.

13.     The claims of the Named Plaintiffs and any member of the putative classes that the Named Plaintiffs seek to represent are barred, in whole or in part, because Wayfair acted at all times in good faith to comply with applicable state laws, and with reasonable grounds to believe that its actions did not violate the statutes cited in the Complaint.

14.     The claims of the Named Plaintiffs and any member of the putative classes that the Named Plaintiffs seek to represent are barred, in whole or in part, because Wayfair's actions were not malicious, egregious, in bad faith, or in willful or reckless indifference or conscious disregard of any legal rights that the Named Plaintiffs or any member of the putative classes the Named Plaintiffs claim to have.

15.     If the Named Plaintiffs and/or any member of the putative classes are entitled to any recovery, which Wayfair denies, the amount of such recovery must be offset by any overpayments and/or compensation paid to them for time periods they falsely reported working

or otherwise did not actually work or time periods for which they were not entitled to compensation.

16.     The claims of the Named Plaintiffs and any member of the putative classes that the Named Plaintiffs seek to represent are barred, in whole or in part, by the doctrine of laches.

17.     The claims of the Named Plaintiffs and any member of the putative classes that the Named Plaintiffs seek to represent are barred, in whole or in part, by their own acts or omissions or the acts or omissions of the other putative class members, and therefore are barred by, without limitation, the doctrines of estoppel, unclean hands, waiver, and accord and satisfaction.

18.     The Named Plaintiffs, and any purported classes of individuals on whose behalf the Named Plaintiffs seek to assert a claim, received overtime compensation for any hours worked in excess of forty hours per week.

19.     The Named Plaintiffs' claims, and those of any purported classes on whose behalf the Named Plaintiffs seek to assert a claim, are barred, in whole or in part, to the extent they failed to exhaust their administrative remedies or fulfill administrative requirements before filing suit.

20.     The Named Plaintiffs lack standing to assert some or all of the claims for relief alleged in the Complaint.

21.     The Named Plaintiffs' claims, and those of any purported classes of individuals on whose behalf Named Plaintiffs seek to assert a claim, are barred, in whole or in part, due to the statute of frauds.

22.     The claims of the Named Plaintiffs and any member of the putative classes that the Named Plaintiffs seek to represent are barred, in whole or in part, to the extent they seek

recovery of damages that would be duplicative to damages sought in other claims or other actions based on the same alleged factual events, including damages sought in the action captioned *Counts, et al. v. Wayfair LLC*, Docket No. 23-cv-11706-FDS, pending in the United States District Court for the District of Massachusetts.

23.    The claims of the Named Plaintiffs and any member of the putative classes that the Named Plaintiffs seek to represent are barred, in whole or in part, by reason of their failure to mitigate any alleged damages and/or losses, if any.

24.    The claims of the Named Plaintiffs and any member of the putative classes that the Named Plaintiffs seek to represent are barred, in whole or in part, to the extent any of the Named Plaintiffs or the purported class members has executed a release of any claims asserted in the Amended Complaint, including without limitation by participation in any settlement by way of a separation or severance agreement.

25.    The claims of many of the alleged members of the putative classes that the Named Plaintiffs seek to represent are barred because they are parties to contracts that prohibit their participation in either a collective and/or class action with respect to the alleged claims and require dispute resolution through arbitration.

26.    The claims in the Complaint for attorneys' fees fail because there is no cause of action that would entitle the Named Plaintiffs or any member of the putative classes collective to such recovery.

Wayfair reserves the right to assert any additional defenses that may be determined during the course of this action.

## **JURY DEMAND**

Wayfair hereby demands trial by jury as to all claims so triable.

Respectfully submitted,

WAYFAIR LLC

By its attorneys:

*/s/ Melanie V. Woodward*
Christopher Lindstrom (BBO# 657430)
clindstrom@nutter.com
Melanie V. Woodward (BBO# 690906)
mwoodward@nutter.com
Emily Grannon Fox (BBO#682267)
efox@nutter.com
Maya Ginga Ritchie (BBO#705397)
mginga@nutter.com
Nutter, McClennen & Fish, LLP
Seaport West, 155 Seaport Blvd.
Boston, Massachusetts 02210
Dated:  September 15, 2025        Telephone:    (617) 439-2000
Facsimile:    (617) 310-9000

## CERTIFICATE OF SERVICE

I, Melanie V. Woodward, certify that on September 15, 2025, a true and accurate copy of the foregoing document was filed electronically with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all counsel of record.

*/s/ Melanie V. Woodward*

7402756